DAVID SALLA et al., Respondents, v COUNTY OF MONROE OF THE STATE OF NEW YORK et al., Appellants, and LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor-Appellant.

Fourth Department, November 10, 1978

438

APPEARANCES OF COUNSEL

*John D. Doyle, Acting Monroe County Attorney (Christine E. Burke* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (John Driscoll* and *Ruth Kessler Toch* of counsel), intervenor-appellant *pro se.*

*Harris, Beach, Wilcox, Rubin & Levey (Paul R. Braunsdorf* of counsel), for respondents.

*Joseph M. Stone* for National Utility Contractors' Association, Inc., *amicus curiae.*

*Blitman & King* for Rochester, New York Building and Construction Trades Council, AFL-CIO, *amicus curiae.*

## OPINION OF THE COURT

MOULE, J.

The principal question involved on this appeal is whether section 222 of the Labor Law violates the privileges and immunities or commerce clauses of the United States Constitution.

In 1976 the County of Monroe (County) through its Division of Pure Waters (Division) advertised for bids for the construction of a sanitary sewer line within the County. The sewer line project is administered by the County and the Division and funded under the Federal Environmental Protection and Pure Waters Acts. Lisbon Contractors, Inc. (Lisbon), a Pennsylvania corporation, was awarded the construction contract. Section 76 of the contract required Lisbon to abide by all local and State laws to the extent that such requirements do not conflict with Federal laws or regulations.

Lisbon commenced construction of the sewer line in September, 1976 with a work force comprising recently hired New York residents and permanent Lisbon employees. Lisbon's permanent employees were residents of either Pennsylvania or New Jersey and they came to Monroe County for the purpose of working on the sewer line project. On November 5, 1976 the County informed Lisbon that section 222 of the Labor Law[1] required that preference in employment on the

---

1. Insofar as it applies here, section 222 of the Labor Law provides with respect to the construction of public works that "preference in employment shall be given to citizens of the state of New York who have been residents of the state for at least twelve consecutive months immediately prior to the commencement of their new employment * * * Persons other than citizens of the state of New York * * * may be

sewer line project be given to New York State residents. The County advised Lisbon that it was not in compliance with the statute and that Lisbon's failure to comply with the statute by November 15, 1976 would be treated by the County as a breach of their contract. Lisbon responded by asserting that it had attempted to comply with section 222 of the Labor Law by actively seeking qualified New York residents through advertisements in local papers and that 31 of its 55 workmen on the project were New York State residents. Nevertheless, the County notified Lisbon that unless compliance with section 222 was achieved by January 14, 1977, it would order all work on the contract suspended. The County, Division and Lisbon conferred on January 10, 1977, at which time Lisbon agreed to replace three nonresident equipment operators with qualified New York residents and to continue its efforts to comply with the statute. On January 13, 1977 the County advised Lisbon that it would not terminate the contract in light of Lisbon's continuing efforts to comply with section 222 of the Labor Law and that there would be biweekly progress reports concerning Lisbon's efforts.

David Salla and Robert Keppley are two of the three equipment operators who were laid off by Lisbon pursuant to the January 10, 1977 meeting. Salla had been employed by Lisbon since May, 1970 and Keppley since November, 1976. Both are residents of Pennsylvania and both became temporary residents of Monroe County for the purpose of working on the project. Neither intends to remain in New York.

Salla, Keppley and Lisbon commenced this suit against the County and Division on January 19, 1977 alleging that section 222 of the Labor Law violates the privileges and immunities, commerce and equal protection clauses of the United States Constitution. They sought a judgment declaring section 222 of the Labor Law unconstitutional and enjoining the County and Division from enforcing it by terminating or suspending Lisbon's contract. The Attorney-General intervened as a party defendant. Defendants County and Division challenged the individual employees' standing to assert the unconstitutionality of the Labor Law provision.

Special Term granted a motion by plaintiffs for summary judgment, declared section 222 of the Labor Law unconstitu-

employed when such citizens or residents are not available. In each contract for the construction of public works a provision shall be inserted that if this section is not complied with, the contract shall be void."

tional and enjoined the County and Division from enforcing this section by terminating or suspending Lisbon's contract for failure to comply with it. The court held that section 222 violates the privileges and immunities, commerce and equal protection clauses of the United States Constitution (90 Misc 2d 427). On a direct appeal to the Court of Appeals pursuant to CPLR 5601 (subd [b], par 2), the court transferred the case to this court because of the existence of questions other than the constitutionality of a statute (43 NY2d 985).

Initially, defendants County and Division contend that the individual employees, Salla and Keppley, do not have standing to challenge the constitutionality of section 222 of the Labor Law because there is no legal relationship between them and the County and Division and because they have not established a nexus between the injury they sustained and the right they seek to vindicate. We hold, however, that the individual employees have standing to challenge this statute because their injuries are likely to be redressed by a favorable decision *(Regents of Univ. of California v Bakke,* — US — [98 S Ct 2733]). Both employees have suffered a loss of employment on the sewer line project and allegedly have not obtained other employment. A decision holding section 222 of the Labor Law unconstitutional will excuse Lisbon's noncompliance with the statute's preference requirement and will allow Lisbon to rehire Salla and Keppley. Furthermore, it has long been recognized that an employee has standing to challenge the unconstitutional interference of third persons with the employer-employee relationship *(Truax v Raich,* 239 US 33, 38-39).

Defendants County and Division contend secondly that Lisbon waived its right to challenge the validity of section 222 of the Labor Law by failing to object to its preference requirement until after commencement of construction and by making substantial efforts to comply with it. While a party may waive constitutional rights where they are exclusively private and no consideration of public morals or policy is involved *(Mayer, etc., of City of N. Y. v Manhattan Ry. Co.,* 143 NY 1, 26; 21 NY Jur, Estoppel, Ratification and Waiver, § 91), the courts do not presume an acquiescence in the loss of fundamental rights *(Ohio Bell Tel. Co. v Commission,* 301 US 292, 307). We do not deem Lisbon's acceptance of the construction contract to be a waiver of its constitutional rights because a public contract should not be conditioned on a waiver of

constitutional rights (see *Cargill Co. v Minnesota,* 180 US 452, 468). Nor do we believe that Lisbon's attempts to comply with the statute in order to avoid breaching the construction contract constitute a waiver of the right to challenge its constitutionality.

Defendants contend thirdly that section 222 of the Labor Law does not violate the privileges and immunities clause[2] of the Federal Constitution. In *Hicklin v Orbeck* (437 US 518) the Supreme Court declared unconstitutional an Alaska statute which provided an employment preference for Alaska residents over nonresidents on the Alaska pipeline project. The Alaska statute was similar to section 222 of the Labor Law in that it defined residents as those persons residing in the State for at least 12 months. Additionally, the plaintiffs in *Hicklin* were nonresidents who came to Alaska solely to work on the pipeline. The court held that the statute violated the privileges and immunities clause, stating that "a resident of one State is constitutionally entitled to travel to another State for purposes of employment free from discriminatory restrictions in favor of state residents imposed by the other State" *(Hicklin v Orbeck,* 437 US 518, 525, *supra;* citing *Ward v Maryland,* 12 Wall [79 US] 418).

The court, in *Hicklin,* set forth an analysis of the privileges and immunities clause which we find applicable to section 222 of the Labor Law. Under this analysis a State may not discriminate against citizens of other States in situations where there is no valid, substantial reason for such discrimination. In order for a discriminatory statute to be valid, the noncitizens must constitute a peculiar source of the evil which the statute seeks to remedy and there must be a reasonable relationship between the evil and the discrimination *(Hicklin v Orbeck,* 437 US 518, 525, *supra).*

The Alaska statute involved in *Hicklin* was designed to counteract high unemployment among Alaskans. The court noted that the constitutional validity of this purpose was dubious and that even if such a purpose were allowable, the Alaska statute violated the privileges and immunities clause because the discrimination that the statute worked against nonresidents did not bear a substantial relationship to the particular evil which they presented. The statute simply

2. This clause provides that "[t]he citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States" (US Const, art IV, § 2).

granted all Alaskans, regardless of their employment status, education or training, a flat employment preference for all jobs covered by the statute. The court found that this statute was not closely tailored to aid the unemployed workers whom the statute was intended to benefit and that "[e]ven if a statute granting an employment preference to unemployed residents or to residents enrolled in job training programs might be permissible [the statute's] across-the-board grant of a job preference to all Alaskan residents clearly [was] not" (*Hicklin v Orbeck,* 437 US 518, 528, supra).

■ The undisputed purpose of section 222 of the Labor Law is to alleviate unemployment in New York. In addition, section 222 is similar to the Alaska statute in *Hicklin* in that it grants an across-the-board job preference to all New York residents. Therefore, section 222 of the Labor Law does not bear a substantial relationship to the particular evil it is aimed at and violates the privileges and immunities clause of the United States Constitution.

■ Defendants claim their public works project falls within the "state-ownership" exception to the privileges and immunities clause, which allows a State to discriminate against noncitizens with respect to resources owned by the State (see *Hicklin v Orbeck,* 437 US 518, 528, *supra).* This exception, however, is not absolute; it applies only where the resource is owned wholly by the State. Furthermore, it is inapplicable to "basic and essential activities, interference with which would frustrate the purposes of the formation of the Union" *(Baldwin v Fish & Game Comm.,* 436 US 371, 387). The sewer line construction project involved here is not the type of State resource within the exception (see *Corfield v Coryell,* 6 F Cas No. 3,230 [oyster beds owned by New Jersey be limited to use by New Jersey residents]; *McCready v Virginia,* 94 US 391 [Virginia may prohibit nonresident oyster growers from using Virginia public waters]; *Geer v Connecticut,* 161 US 519 [Connecticut may limit disposition of game birds within its boundaries]; see, generally, *Baldwin v Montana Fish & Game Comm.,* 436 US 371, 379-380, *supra).* Moreover, the presence of Federal funding for the project casts considerable doubt upon the project's status as State owned.

■ Defendants contend fourthly that section 222 of the

Labor Law does not violate the commerce clause[3] of the United States Constitution. In the absence of Federal legislation, commerce is "open to control by the States so long as they act within the restraints imposed by the Commerce Clause" *(City of Philadelphia v New Jersey,* 437 US 617, 623). These restraints are found not in the language of the clause itself but in decisions of the court that give effect to its basic purpose, which is to prevent the States from becoming isolated economic units. Where State statutes effect simple economic protectionism, "a virtually *per se* rule of invalidity has been erected" *(City of Philadelphia v New Jersey,* 437 US 617, 624, *supra).*

■ The effect of section 222 of the Labor Law is to protect New York residents from the competition of out-of-State labor. In this respect, it results in improper economic protectionism. Although such protectionism was seen by the Legislature as a means to remedy the problem of unemployment in New York, "in the long run prosperity and salvation are in union and not division" *(Baldwin v G. A. F. Seelig, Inc.,* 294 US 511, 523).

■ In light of our determination that section 222 of the Labor Law unconstitutionally violates both the privileges and immunities and commerce clauses, we find it unnecessary to reach the contention that it also violates the equal protection clause. We note, however, that section 222 of the Labor Law has been held to violate the equal protection clause insofar as it discriminates against resident aliens *(C. D. R. Enterprises, Ltd. v Board of Educ. of City of N. Y.,* 412 F Supp 1164, affd without opn *sub nom. Lefkowitz v C. D. R. Enterprises, Ltd.,* 429 US 1031).

Accordingly, the judgment should be affirmed.

DILLON, J. (dissenting). I dissent. Given the strong presumption of constitutionality of a legislative enactment and the heavy burden imposed upon one who would overcome the presumption, I am not persuaded that section 222 of the Labor Law is unconstitutional upon any of the asserted grounds. The narrow applicability of the statute, limited as it is to public works contracts to be performed exclusively on State land by contractors having a direct contractual relationship with the State's governmental entities and who will be paid solely by the State or its governmental subdivisions, removes it from

---

3. This clause provides that "Congress shall have Power * * * To regulate Commerce * * * among the several States" (US Const, art I, § 8).

the scope of any challenge under the privileges and immunities clause (US Const, art IV, § 2) and justifies its discrimination against nonresidents (cf. *Hicklin v Orbeck,* 437 US 518, 528; see *McCready v Virginia,* 94 US 391).

Nor do I believe that the commerce clause (US Const, art I, § 8), which grants Congress the power to "regulate Commerce with foreign Nations, and among the several States", should be applied, in the circumstances presented, to a public works contract for the construction of a sewer line undeniably situate intrastate (cf. *City of Philadelphia v New Jersey,* 437 US 617, *Hicklin v Orbeck,* 437 US 518, 531-534, *supra; Baldwin v G. A. F. Seelig, Inc.,* 294 US 511).

Finally, while the durational residency requirement of section 222 of the Labor Law raises a matter of constitutional interest with which we are not here confronted (see, e.g., *Phelan v City of Buffalo,* 54 AD2d 262 and cases cited therein), the plaintiffs may not meritoriously claim a denial of equal protection where the State's action is reasonably based and is taken in the exercise of its traditional governmental function.

The judgment should be reversed and the complaint dismissed.

MARSH, P. J., SIMONS and HANCOCK, JR., JJ., concur with MOULE, J.; DILLON, J., dissents and votes to reverse judgment and dismiss complaint in an opinion.

Judgment affirmed, with costs.