Gabrielli, J.
(dissenting). I cannot agree with the view expressed by the majority that section 222 of the Labor Law violates the privileges and immunities clause of the United States Constitution (US Const, art IV, § 2), as that clause has been applied in recent years. Accordingly, I would reject the *526 contentions advanced by the plaintiffs in this case and reverse the order of the Appellate Division which struck down the statute as unconstitutional.[1]
I note at the outset that we are not here faced with a challenge to the durational aspects of the residency requirement contained in section 222 of the Labor Law (compare Shapiro v Thompson, 394 US 618, with Sosna v Iowa, 419 US 393; Memorial Hosp. v Maricopa County, 415 US 250; and Vlandis v Klein, 412 US 441).[2] Nor have we been asked to consider the propriety of a purely regulatory measure calculated to prevent or inhibit nonresident construction workers from traveling into our State and "plying their trade” in the private marketplace (see Ward v Maryland, 12 Wall [79 US] 418), for section 222 erects no such barrier to outsiders seeking employment within the State. Rather, we are asked only to determine whether New York State may refuse to do business with those who hire nonresidents without running afoul of the privileges and immunities clause of the United States Constitution.
In concluding that it may, I draw upon principles derived from the related body of interpretive law associated with the commerce clause (US Const, art I, § 8, subd 3). Although the commerce clause, like the privileges and immunities clause, generally prohibits States from using their regulatory powers to discriminate against interstate commercial activities (e.g., Baldwin v G. A. F. Seelig, 294 US 511; Blake v McClung, 172 US 239; cf. Matter of Gordon, 48 NY2d 266), it does not impose a similar restriction upon a State’s right to use its spending powers to promote local industry or give its citizens a competitive edge in pursuit of its governmental goals (Hughes v Alexandria Scrap Corp., 426 US 794). This is especially so where, as here, the State’s decision to spend *527 creates a new or additional market for the particular goods or services which would not otherwise have existed (Hughes v Alexandria Scrap Corp., supra, at pp 806-810).[3] Indeed, it is because section 222 is directed only at those job opportunities which are created by the State’s exercise of its spending power that the cases cited by the majority are not controlling here.
In Toomer v Witsell (334 US 385) and the cases that followed (e.g., Hicklin v Orbeck, 437 US 518; Mullaney v Anderson, 342 US 415), the Supreme Court made clear that the mere "ownership” by a State of a natural resource does not, without more, provide sufficient justification for the State to enact legislation limiting access to that resource to its own residents. According to the Toomer line of cases, the privileges and immunities clause precludes States from hoarding their resources for their own citizens unless it can be shown that the use of the resource by outsiders poses a "peculiar” threat to the resource’s existence and, additionally, that the discriminatory measure adopted by the State bears a substantial relation to the type of harm it purports to prevent.
An entirely different question is presented, however, when a State seeks to preserve for the enjoyment of its citizens a "resource” it has created through its own efforts (Tribe, American Constitutional Law, § 6.33 [1979 Supp], pp 38-39; see Baldwin v Montana Fish and Game Comm., 436 US 371). Under such circumstances, the doctrine enunciated in Toomer would appear to be of little significance.
That this is so is strongly suggested by the Supreme Court’s language in Doe v Bolton (410 US 179), a case involving a constitutional challenge to a Georgia statute which precluded nonresidents from obtaining abortions at any medical facilities within the State whether privately or publicly operated. Citing its earlier decision in Toomer v Witsell (334 US 385, supra), the Supreme Court in Bolton held that the privileges and immunities clause "protects] persons who enter Georgia seeking the medical services that are available there”, but noted that its conclusion might be different if the challenged statute was based upon a more limited policy of "preserving state-supported facilities for Georgia residents” (Doe v Bolton, *528 supra, at p 200; see Tribe, American Constitutional Law, § 6.33 [1979 Supp], pp 38-39, & n 92).
Like the hypothetical statute in Bolton, section 222 of the Labor Law is calculated only to preserve for New York State residents the expanded employment opportunities that are created when the State embarks upon a public works project. The statute does not prevent out-of-State laborers from coming into the State and securing jobs in their accustomed field; rather, it simply establishes, as a matter of public policy, that when the State of New York enters the marketplace as a purchaser of services, it will use its bargaining power to promote the interests of its citizens. In my view, there is nothing in the privileges and immunities clause or in the case law interpreting it that would proscribe such a policy.
I note that the Supreme Court’s recent decision in Hicklin v Orbeck (437 US 518, supra) does not suggest a contrary conclusion. In Hicklin, the court struck down as violative of the privileges and immunities clause an Alaska statute which mandated that (at p 520) "all oil and gas leases, easements or right-of-way permits for oil or gas pipe line purposes” obtained from the State’s Natural Resources Commissioner contain a provision requiring the lessee to give preference in hiring to Alaska residents. The "Alaska Hire” statute was broadly drafted, its reach extending to all private employment generated by activities within the State (at p 529) "which [are] a result of oil and gas leases, easements, leases or right-of-way permits”. Finding no substantial relationship between the discriminatory effect of the statute and the "evil” it was designed to address, the State’s high unemployment rate, the Supreme Court concluded that the statute was incompatible with the privileges and immunities clause.
Although there are superficial similarities between section 222 of the Labor Law and the "Alaska Hire” provisions struck down in Hicklin, the fundamental differences between the legislative measures becomes apparent when the two are closely compared. The "Alaska Hire” statute represented a naked attempt by the State to use its fortuitous ownership of the rights to gas and oil lands as a predicate for regulating the hiring practices of private employers in a manner that would otherwise be impermissible under the privileges and immunities clause. While acknowledging that a State’s ownership of a resource will ordinarily be the dispositive factor in evaluating whether a discriminatory statute passes muster *529 under the privileges and immunities clause (see McCready v Virginia, 94 US 391), the Supreme Court nevertheless rejected the enactment at issue in Hicklin, stating: "Alaska has little or no proprietary interest in much of the activity swept within the ambit of Alaska Hire; and the connection of the State’s oil and gas with much of the covered activity is sufficiently attenuated so that it cannot justifiably be the basis for requiring private employers to discriminate against nonresidents” (437 US, at p 529).
In contrast, New York State has a clear and direct proprietary interest not only in the "resource” with which section 222 of the Labor Law is concerned, but also in the activities subsumed within the statute’s terms: public works projects. Indeed, it is New York’s ongoing interest in and control over public works projects that renders section 222 of the Labor Law constitutionally unobjectionable. While it is true that a State may not baldly exploit its passive ownership of a resource by indirectly using it as a basis for requiring discrimination against nonresidents in private hiring, nothing in Hicklin or the cases preceding it suggests that when a State has created a resource such as job opportunities, it cannot direct that the resource be used to the advantage of its own citizens.
For the foregoing reasons, I vote to reverse the determinations below.
Judges Jasen, Jones, Wachtler and Meyer concur with Judge Fuchsberg; Judge Gabrielli dissents and votes to reverse in a separate opinion in which Chief Judge Cooke concurs.
Order affirmed, with costs.

. In addition to challenging the validity of section 222 of the Labor Law under the privileges and immunities clause, plaintiffs have also raised claims under the equal protection clause of the Fourteenth Amendment as well as under the commerce clause of the United States Constitution (art I, § 8, subd 3). For the reasons stated in Presiding Justice Michael F. Dillon’s dissenting opinion at the Appellate Division (64 AD2d 437, 445-446), I find the latter claims to be wholly without merit.

. Section 222 of the Labor Law requires that public works contractors give preference in hiring to job applicants who have been New York State residents for at least 12 consecutive months. While there may be some question concerning the validity of this durational requirement, plaintiffs in this case have no standing to raise such a question, since they admittedly have no intention of establishing residency in New York under any circumstances.

. The majority bolsters its position by noting that the public works project at issue in this case was heavily financed by the Federal Government. I fail to grasp the significance of this fact, however, since there are no indications in the record that the hiring preference mandated by section 222 of the Labor Law contravenes any of the policies underlying the Federal legislation which authorized the sewer project subsidy.