Leon D. Lazer, J.
In this article 78 proceeding, a discharged teacher seeks judgment directing the respondent Board of Education of the Three Village Central School District (the "board”) to advise him in writing of the charges against him, to hold a hearing on those charges, to reinstate him during the interim, and to pay his back salary from January 1, 1977 to the date of the commencement of this proceeding. The board has filed an answer and moved to dismiss the proceeding on the ground that petitioner had previously waived his right both to a notice of charges and a hearing. The facts are relatively undisputed.
On May 28, 1975 the petitioner, who was a tenured K-6 teacher, received formal notices from the board charging him with incompetence, insubordination, neglect of duty and other *482 unsatisfactory conduct in the performance of his duties. A hearing on the merits of the charges was scheduled and the local bargaining agent, the Three Village Teachers Association, retained counsel to represent the petitioner. On October 7, 1975, the second day of the hearing, petitioner and the board entered into a stipulation of settlement in which it was agreed that the pending charges would be dismissed with prejudice, that, in consideration of the dismissal, petitioner would take a year’s leave of absence without pay, that the board would permit him to resume his teaching duties from September, 1976 to December, 1976 at one of the elementary schools where he had previously taught, and that during this period the school principal would determine in his sole discretion whether petitioner’s employment should be permanently terminated. The principal’s decision was to be based solely upon petitioner’s performance during his resumption of duties without any consideration of the prior charges against him. Although the criteria upon which the principal’s determination was to be based were to be furnished petitioner, the decision of the former was to be final. It was further agreed that the petitioner "waives his right to a 3020A Hearing in the event that [the principal] determines at Christmas, 1976, that his employment should not continue in the District” and that the petitioner "waives all rights that he might have had under Article 78 of the Civil Practice Law and Rules, or any other provision of law to challenge the determination of [the principal] as to his non-retention.” According to the hearing officer's summation of the stipulation at the hearing, "the stipulation today is that [the principal’s] decision is absolute, final and not appealable anywhere at anytime by [petitioner] or by the School Board.”
Petitioner took the leave of absence provided in the stipulation and resumed his teaching duties in September, 1976. In December, 1976 the school principal decided that petitioner’s employment should be terminated and the board notified him that his job was at an end in accordance with the stipulation.
In the instant proceeding, petitioner contends that he was never advised that under the stipulation "he was giving up his property rights [teacher’s contract], statutory rights as a tenured teacher and was permitting his property rights and statutory rights as a tenured teacher to be taken away without due process of law at some future date.” He also claims that he did not retain the attorney who purported to repre *483 sent him and that he was confused and did not fully understand the purport of the stipulation. Finally, he asserts that the 1975 charges of incompetency were vague and tenuous and that his performance for the period September to December, 1976 was good as evidenced by the fact that his students achieved well, their parents had nothing but praise for his work, and no charges were brought against him concerning his conduct and performance during this period. The stipulation was, petitioner declares, an unconscionable violation of public policy and an improper alteration of his contract rights. Nevertheless, despite his current protestations, it is apparent that when petitioner entered into the stipulation he was represented by counsel, had the advice of representatives of his bargaining agent and had full knowledge of the consequences. Absent the public policy concerns considered in this opinion, justice would mandate that petitioner be held to the bargain he knowingly made.
In an affidavit in support of the board’s answer, the district superintendent declares that he agreed to the terms of the settlement "upon considering alternative proposals and the possible consequences of a tenure hearing.” The settlement, he concluded, "would avoid the many additional hours which would have been required on the part of School District attorneys and School District personnel to fully prosecute the tenure charges brought against the petitioner.” The superintendent thus appears to concede that the board’s objective was to avoid the burdens the tenure laws imposed upon his school district by getting the petitioner’s consent to a trial period of employment after which he could be dismissed without charges or a hearing. The board does not argue, however, that the stipulation of settlement extinguished petitioner’s status as a tenured teacher and it is apparent that he retained that status until the completion of his service in December, 1976 and his actual termination. Simply put, the issue is whether petitioner could validly waive in advance the tenure rights he now seeks to assert.
Subdivision 2 of section 3020-a of the Education Law permits a limited waiver of the statutory hearing (i.e., the teacher may waive the hearing within 10 days of receipt of the charges). A teacher can, of course, terminate a hearing by simply resigning (Matter of Cedar v Commissioner of Educ., 30 AD2d 882; see Matter of McFerran v Board of Educ., 21 AD2d 944, affd 15 NY2d 630) thus effectively forfeiting tenure rights. *484 Here, however, petitioner did not waive the hearing upon which the original charges were based, nor did he resign. In consideration of dismissal of the pending charges he agreed to waive statutory tenure rights which he might be entitled to invoke in the future by consenting to a discharge without notice or hearing after the period of his resumption of duties from September to December, 1976.
As a general rule, a party may waive a statutory or even a constitutional provision enacted for his benefit or protection where it is exclusively a matter of private right and no consideration of public policy or morals is involved (Selzer v Baker, 295 NY 145; Rosen v New York City Teachers’ Retirement Bd., 282 App Div 216, affd 306 NY 625). However, a statutory right conferred on a private party affecting the public interest may not be waived or released if such waiver or release contravenes the statutory policy (Estro Chem. Co. v Falk, 303 NY 83). A party cannot in advance make a valid promise that a statute founded in public policy shall be inoperative (Boyd H. Wood Co. v Horgan, 291 NY 422; see Estro Chem. Co. v Falk, supra; see, also, Caravaggio v Retirement Bd. of Teachers’ Retirement System of City of N. Y., 36 NY2d 348). Apart from their constitutionally protected interest in the right to employment and compensation therefor of which tenured teachers cannot be deprived without due process of law (Board of Regents v Roth, 408 US 564), there are other significant public policy factors involved in the tenure laws. Public policy is the interest of others than the parties and that interest may not be set at naught by the acts or conduct of any party alone (Moncel Realty Corp. v Whitestone Farms, 188 Misc 431, affd 272 App Div 899). Tenure laws express a strong public policy " 'to give security to * * * members of the educational system in the positions to which they have been appointed’ ” (Matter of Boyd v Collins, 11 NY2d 223, 233). That security prevents the removal of competent teachers "for personal or political reasons to the manifest detriment of the schools” (People ex rel. Callahan v Board of Educ., 174 NY 169, 178; Matter of Monan v Board of Educ., 280 App Div 14).
Reported cases concerning the waiver of tenure rights are notably sparse in this State. In Boyd v Collins (supra), however, where the consideration for the teacher’s waiver of a hearing on charges was a year’s pay and a "good letter of recommendation,” the waiver was declared invalid as a viola *485 tion of the strong public policy expressed in the tenure laws. The consequence of the instant petitioner’s waiver was to render his tenure rights inoperative to the extent that he could be discharged without a hearing at the whim of a school principal at the end of a specific period of future service. A peculiarity of the instant waiver was that petitioner could not be fired without notice and a hearing during the period of his future service, but only at the end of it. At that point, however, his status abruptly became inferior to that of a probationer who would have been entitled in advance to be apprised of the reasons for his dismissal, the opportunity to submit a response in writing, and the right to have the board of education (and not a principal) make the determination as to whether his services should be terminated (Education Law, § 3031; Matter of Board of Educ. v State Div. of Human Rights, 42 AD2d 473).
Although there is nothing in the instant record to establish that the board entered into the stipulation in bad faith, the procedure it adopted evaded the demands of public policy. It was a violation of petitioner’s right to a hearing and due process for the principal to recommend his dismissal without notice and hearing (Matter of Gray v Board of Educ., 41 AD2d 739) and for the board in effect to find him guilty of conduct not charged and to dismiss him (see Matter of Soucy v Bd. of Educ., 41 AD2d 984, app dsmd 33 NY2d 653; Matter of Murray v Murphy, 24 NY2d 150). The procedure for removal of teachers provided for in the tenure statute of the Education Law is the exclusive method for dismissal of teachers with tenure (Matter of Kobylski v Agone, 37 Misc 2d 255, affd 19 AD2d 761; see Matter of Mannix v Board of Educ., 21 NY2d 455; Matter of Glass v Board of Educ., 21 AD2d 891). Regardless of whether petitioner deserved the tenure protections the law afforded him, and no matter the motivation of either party, the statute enacted to protect tenured teachers for their own and the public’s interest could not be rendered inoperative in the fashion contained in the stipulation.
But even apart from the waiver of future rights, the provision in the agreement for a trial period of re-employment is of dubious validity. During that trial period, petitioner was not a probationer and he was not a temporary employee either because any effort by the board to make a temporary appointment to a permanent position would have been deemed an attempt to evade the tenure laws (see Serritella v Board of *486 Educ., 58 AD2d 645). Petitioner’s status as a tenured employee whose rights terminated at the end of a particular period of service was nowhere authorized by law. A board of education has no power to make contracts with its employees which are not authorized in statute (Downey v Lackawanna City School Dist., 51 AD2d 177) and it cannot establish trial periods for its employees except in conformity with the Education Law.
As a final defense the board pleads laches, but the fact that petitioner waited until after the board exercised its right under the stipulation does not constitute a bar to this proceeding. Laches is no defense where the relief sought is a matter of right rather than indulgence, at least as long as the statutory limitation period is complied with (see Harman v Board of Educ., 196 Misc 287, affd 275 App Div 694, affd 300 NY 21, mot for rearg den 300 NY 644). There is no allegation here that this proceeding was not commenced within the statutory period after the invalid dismissal. Furthermore, lapse of time without a showing of prejudice is no defense (Glenesk v Guidance Realty Corp., 36 AD2d 852).
The petition is granted to the extent that the board is directed to comply with the provisions of section 3020-a of the Education Law with respect to petitioner’s performance of his teaching duties during the period September to December, 1976. The board shall reinstate petitioner as a teacher and pay his back salary from January 1, 1977 less any amounts earned by him from other employment during the interim.