In the Matter of DAVID ABRAMOVICH, Respondent, v BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 1 OF THE TOWNS OF BROOKHAVEN AND SMITHTOWN, Also Known as THREE VILLAGE CENTRAL SCHOOL DISTRICT No. 1, Appellant.

Second Department, April 17, 1978

APPEARANCES OF COUNSEL

*Pelletreau & Pelletreau (Peter V. Snyder* of counsel; *Kevin A. Seaman* on the brief), for appellant.

*Francis M. Neary, P. C. (Jeffrey Michael Conforte* on the brief), for respondent.

**OPINION OF THE COURT**

Suozzi, J.

The issue presented for review on this appeal is whether the stipulation entered into by the parties, in which petitioner waived his tenure rights under section 3020-a of the Education Law in exchange for appellant's withdrawal of disciplinary charges against him, is void as against the public policy of this State. Special Term held that the tenure laws are rooted in

public policy to such an extent that they cannot be bargained away by an individual teacher. We reverse and hold that the stipulation was effective and enforceable.

Petitioner was a tenured teacher employed by the appellant school district. In May, 1975 the board of education filed charges against him based on 49 alleged incidents of misfeasance in an effort to effect his removal. A tenured teacher termination hearing pursuant to section 3020-a of the Education Law was commenced in September, 1975. After two sessions of the hearing had been held, a settlement was reached between the parties and a stipulation was entered into. In consideration of the withdrawal of the charges with prejudice, petitioner agreed to waive, *in futuro,* certain statutory tenure rights. The significant terms of the stipulation were as follows: (1) petitioner was required to take a leave of absence of approximately one academic year; (2) commencing in September, 1976, petitioner was to be rehired by respondent as an intermediate grade teacher at the Mount School, whose principal was one John Burns; (3) at Christmas vacation of 1976, Burns was to advise petitioner whether he was to continue as a teacher; (4) petitioner waived his right to a hearing pursuant to section 3020-a before such possible termination; and (5) appellant was to send petitioner a written explanation of the evaluation criteria Burns would use, as well as advice on how to improve his teaching skills.

Petitioner was fully attended by counsel and was thoroughly queried to make sure he understood and consented to all parts of the agreement. Only then did the hearing officer approve the stipulation.

All of the terms of the stipulation were fulfilled. Come Christmas vacation of 1976, petitioner was deemed unqualified and his employment was terminated. He now contends that the stipulation bypassed the statutory mandates of the Education Law, the public policy of this State, and should be voided. We disagree.

■■ Although the waiver of statutory or even constitutional rights has long been recognized as acceptable practice so long as it is done intelligently and voluntarily, no effect will be given to a waiver which violates public policy (see *Estro Chem. Co. v Falk,* 303 NY 83, 87; *Rosen v New York City Teachers' Retirement Bd.,* 282 App Div 216, 218, affd 306 NY 625). Petitioner, with the advice of counsel and as a *quid pro quo* for a "second chance" to retain his job, waived his right to

a hearing. Rather than take a chance on what he must have viewed as probable dismissal after the hearing, he accepted the stipulation, which offered the prospect of job retention. Such a settlement does not violate public policy.

First, all of the parties whose combined voices go into the formulation of public policy participated in the settlement. The board of education represented the taxpayers of the district; the teachers' union represented the broader interest of all teachers in the district; petitioner's own counsel represented the individual rights of his client; and the hearing officer represented the legislative intent as expressed in the Education Law. Such a wide range of input assures an agreement protective of the public interest.

Second, the public policy expressed in the tenure statutes is designed to protect individual teachers, as public servants, from being dismissed without a hearing once their competency has been demonstrated. It is a form of job security which insures stability in the educational system. While there is certainly a *public* interest in retaining quality teachers, the primary benefits of the tenure statutes are enjoyed by the individual tenured teacher. Since they protect the individual teacher, the individual teacher may waive their protections under circumstances which show that the teacher is not being coerced or exploited by an omnipotent board of education.

This was not an oppressive or unconscionable contract of adhesion. Rather, the board offered petitioner a second chance to keep his job, along with the necessary advice on how to improve. The agreement had give and take on both sides. To hold, as did Special Term, that "[t]he procedure for removal of teachers provided for in the tenure statute * * * is the *exclusive* method for dismissal of teachers with tenure" (91 Misc 2d 481, 485; emphasis in original) is to unnecessarily preclude imaginative compromise. Instead, every tenured teacher would be forced to face hearings and dismissal whenever charges were brought. Petitioner was able to bargain for a "second chance" and the district, acting in good faith, was able to spare the expense of having to bring him up on charges a second time. Obviously, if there were not a reasonable chance that the charges against petitioner would have been sustained at the first hearing, he would not have bargained away his right to a later hearing. So long as the board acts openly and fairly, as it did here, and the teacher is fully advised by counsel, public policy should not prevent such stipulations.

■ Third, the stipulation was more in the nature of a settlement of a quasi-judicial proceeding than a pure waiver. A board of education certainly has the right to negotiate settlements of removal proceedings in the best interest of the taxpayers of the district *(Matter of Cedar v Commissioner of Educ. of State of N. Y.,* 53 Misc 2d 702, affd 30 AD2d 882). The holding in *Matter of Boyd v Collins* (11 NY2d 228) is not to the contrary. There, a board of education attempted to remove a tenured teacher, without charges and without a hearing, by paying her a year's salary for not teaching. The teacher did not initially accept these terms but was simply told by the board not to return to the classroom. Finally, the board did not fulfill the promises it had made in the agreement. Here the hearing was already under way when the settlement was reached. Petitioner voluntarily gave up his tenure rights under the advice of counsel. The settlement was approved by an impartial hearing officer and all of its terms were fulfilled.

■ A board of education is not prevented by public policy from dealing openly and flexibly with one of its tenured teachers in an effort to arrange a settlement which attempts to correct the teacher's deficient skills while perhaps staving off his termination.

HOPKINS, J. P., TITONE and MARGETT, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered August 29, 1977, reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits.