OPINION OF THE COURT
Harold J. Hughes, J.
This is a case where more than 1,200 New Yorkers face the loss of their jobs because their employers have not done sufficient business with subcontractors of the sex, race or ethnic background favored by the Federal and State governments.
For more than 100 years, Callanan Industries, Inc. has been engaged in the business of quarrying stone, manufacturing construction materials, and constructing highways and streets in the State of New York. More than 75% of its work is with the Department of Transportation (DOT) on highway improvement projects. By decision dated January 3, 1986 the Commissioner of Transportation barred Callanan Industries and its *334 affiliates from receiving any award of public construction contracts from DOT for a 30-month period. There is no complaint about the quality of Callanan’s work, or the price. The reason for the ban is that the Commissioner determined that Callanan was acting to circumvent an affirmative action program.
The Commissioner requires that all contracts awarded by DOT through the public bidding process contain a provision that the contractor be obligated to make a good-faith effort to subcontract out a certain percentage of the work (DOT sets the percentage) to businesses owned and operated by minorities and women. The groups given the favored treatment are: blacks, Hispanics (persons of Mexican, Puerto Rican, Dominican, Cuban, Central or South American origin who are either Indian or Hispanic); Asian and Pacific Islanders (persons having origins in any of the original peoples of the Far East, Southeast Asia, the Indian subcontinent or the Pacific Islands); American Indian or Alaskan native (persons having origins in any of the original peoples of North America and maintaining identifiable tribal affiliations through membership and participation or community identification); and women. The Commissioner’s program is called the Disadvantaged/Women Business Enterprise Program. A woman or minority-owned business enterprise is not recognized unless the minority member or woman owns at least 51% of the stock and they "must have and exercise the authority to independently control the business decisions of the enterprise”. The contractor must appoint a "minority and women-owned business enterprise officer” who is responsible for recruiting minority and women subcontractors, and keep extensive records for a three-year period documenting the efforts to comply with the affirmative action program. DOT maintains a list of minority and women-owned enterprises which is made available to contractors to help them meet their quotas.
The Commissioner has adopted a Manual of Administrative Procedures Code (MAP) which in sections 7.1 to 7.4 sets forth the standards for determining if a contractor is a responsible bidder. The code provides: "As a general policy, NYSDOT will also not consider a bidder to be responsible if the bidder has established a history of failing to honor affirmative action commitments undertaken in connection with prior contracts, or has otherwise demonstrated bad faith in connection with NYSDOT’s affirmative action program.”
A contractor can be suspended or barred from bidding on *335 public contracts if the Commissioner determines that it has a record of unsatisfactory efforts in connection with its affirmative action commitments. Callanan has been banned because it allegedly set up subcontracting entities owned by minorities and women which were not independent of Callanan’s control. Through this proceeding Callanan argues that the Commissioner does not have the statutory authority to promulgate and enforce MAP §§ 7.1 through 7.4 and has failed to adopt MAP as formal regulations in compliance with the State Administrative Procedure Act. Respondent contends that all of his actions have been lawful.
Government favoritism based upon race, sex, or ethnic background is wrong. It is wrong when South Africa gives the white race preferential treatment and it is wrong when New York State gives preferential government treatment to blacks, women, and people of certain ethnic backgrounds. The motive for the favoritism is irrelevant. Certainly, one of the main functions of government is to assist the poor and promote advancement of the underprivileged. However, that assistance should be determined by need and not the recipient’s color, sex, or country of origin. The goal of our society is that all citizens receive equal justice, and that government dispense its benefits with a blind eye to the recipient’s color, sex or ethnic group (US Const 14th Amend; see, NY Const, art I, § 11, which provides: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state”). Affirmative action programs do not further that goal.
The legal issue is whether the Commissioner of Transportation has the authority to promulgate the rule that if a contractor does not comply with DOT’s affirmative action program, it can be barred from government contracts. The Court of Appeals has held that the executive branch of government does not have the authority to initiate affirmative action programs without legislative authorization (Matter of Fullilove v Beame, 48 NY2d 376; see also, Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344). Through Transportation Law §§ 427 and 428 the Governor has been given legislative authorization to establish procedures and guidelines for affirmative action programs in the awarding of contracts by DOT. The penalties that will be *336 imposed for noncompliance with affirmative action are an integral part of any such program. The Governor considered such a plan and, in fact, had 88 pages of proposed regulations entitled "New York State Minority and Women-Owned Business Enterprise and Contract Compliance Program Regulations” prepared. On March 6, 1985 the proposed regulations were published in the State Register for public comment. Thereafter, the Governor decided not to promulgate this affirmative action plan. The Governor recently expressed his opinion on the issue, stating: "Of course it’s wrong to judge a person by the place where his forebears came from. Of course that would violate all that we stand for, fairness and common sense.” (Speech by Governor Mario M. Cuomo, given Feb. 12, 1986 at Springfield, Illinois, commemorating Abraham Lincoln’s birthday.)
The Governor went on to quote Abraham Lincoln’s statement on American society as: "You will rise or fall on your merit as a person and the quality of your work. All else is distraction.”
The Governor has not promulgated those parts of MAP §§ 7.1 through 7.4 which have been used to penalize Callanan for abuse of DOT’s affirmative action program, and it has not been shown that he delegated the authority to do so to the Commissioner.* The Commissioner has no independent statutory authority to devise his own plan for enforcing an affirmative action program. The adoption by the Commissioner of Transportation of those portions of Department of Transportation’s Manual of Administrative Procedures §§ 7.1 through 7.4 which authorize the imposition of penalties against a bidder or contractor for abuse of an affirmative action program was in excess of the Commissioner’s jurisdiction, and without legal authority. That being the case, the determination of January 3, 1986 barring Callanan and its subsidiaries for a 30-month period from doing work with DOT must be annulled. The court does not reach the question of whether the State Administrative Procedure Act applies.
*337 The determination of January 3, 1986 that petitioner and its affiliates are barred from receiving awards of future projects as contractor and/or approval as a subcontractor, supplier or provider of labor on all Department of Transportation projects for 30 months will be annulled, with costs to petitioner.

 Such a delegation is discredited by the Governor’s work on his "New York State Minority and Women-Owned Business Enterprise and Compliance Program Regulations”. Moreover, there should be a uniform executive policy on affirmative action issued out of the Governor’s office and applicable to all State agencies so that contractors doing business with the State do not confront a situation where each agency has its own, perhaps conflicting, rules. No doubt that is one of the reasons Transportation Law §§ 427 and 428 delegate power to the Governor and not to the Commissioner of Transportation.