In the Matter of CALLANAN INDUSTRIES, INC., Respondent, v
FRANKLIN E. WHITE, as Commissioner of Transportation
of the State of New York, Appellant.

Third Department, July 10, 1986

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Lawrence S. Kahn* of counsel), for appellant.

*Hayes & Hayes (Harry R. Hayes* of counsel), for respondent.

*DeGraff, Foy, Conway, Holt-Harris & Mealey (Michael J. Cunningham* of counsel), for Associated General Contractors of America, New York State Chapter, Inc., *amicus curiae.*

*Shearman & Sterling* for Lawyers' Committee for Civil Rights Under Law and others, *amici curiae.*

## OPINION OF THE COURT

MAHONEY, P. J.

Petitioner is a corporation in the business of highway construction. More than 75% of its work is directly related to highway projects of the Department of Transportation. The Department has promulgated detailed procedures dealing with the suspension or debarment of contractors found not to be responsible (referred to as MAP 7.1-7-4). MAP 7.1-7-4 provides that a contractor's failure to honor the Department's affirmative action program in connection with prior contracts constitutes one form of irresponsibility. By letter dated December 2, 1985, the Department notified petitioner that it had received information indicating that petitioner had failed to carry out its affirmative action obligations with regard to three prior contracts with the Department. Petitioner was also advised that the Department was considering suspending or debarring petitioner from participating as a bidder, subcontractor and/ or supplier on future Department contracts. After a meeting among the representatives of the parties, the Department, by decision dated January 3, 1986, debarred petitioner from receiving awards of future projects and from participating as a subcontractor, supplier or provider of labor on future contracts for a period of 30 months.

Petitioner thereafter commenced this CPLR article 78 proceeding against respondent seeking to set aside the Department's determination and to declare that MAP 7.1-7-4 is void as adopted in that it is in excess of the Department's jurisdiction. Special Term agreed with petitioner and set aside the Department's determination, declaring that MAP 7.1-7-4 was adopted without authority (131 Misc 2d 333). Respondent has appealed.

The central focus of the parties' arguments is on the issue of the Department's authority to develop an affirmative action program absent express legislative direction. However, a more fundamental issue must be dealt with first. The Department's debarment decision was made pursuant to MAP 7.1-7-4 and petitioner sought to annul both the debarment decision and MAP 7.1-7-4. As mentioned earlier, MAP 7.1-7-4 does not itself contain any affirmative action program, but contains the procedures for debarment or suspension of bidders. Affirmative action is only involved to the extent that the failure to comply with the Department's affirmative action program is deemed to be one form of irresponsibility. The primary issue on this appeal is whether the Department had the authority to provide for a means of debarring or suspending bidders on the ground of irresponsibility.

An administrative agency has only those powers conferred upon it by the Legislature and such other powers as are incidental thereto or necessarily implied therefrom (see, Matter of Brooklyn Union Gas Co. v Public Serv. Commn., 101 AD2d 453, 457-458). The Department's authority regarding the awarding of contracts is provided in Highway Law § 38: "State highways shall be constructed or improved by contract. Upon the completion and final adoption or approval, as provided by law, of the plans and specifications for the construction or improvement of a state highway, contracts therefor shall be executed as provided herein." The statute further provides that: "The contract for the construction or improvement of such highway * * * shall be awarded to the lowest responsible bidder, as will best promote the public interest" (Highway Law § 38 [3]). "The commissioner of transportation may reject any or all proposals and may advertise for new proposals * * * if, in his opinion, the best interests of the state will thereby be promoted" (Highway Law § 38 [4]). Thus, the authority given the Department with regard to the awarding of contracts is in terms of rejecting or accepting bids. Certainly, the Department can and should consider past conduct

by a bidder in making its decision as to whether the bidder on a particular contract is responsible *(see, Matter of Futia Co. v Office of Gen. Serv.,* 39 AD2d 136). However, in no statute has the Legislature granted the Department the authority to commence any sort of proceeding for the purpose of punishing an irresponsible bidder or debarring such a bidder from submitting bids in the future.

The power to investigate violations of a statute and to punish violators is a significant power and is penal in nature *(cf. Matter of Dadson Plumbing Corp. v Goldin,* 66 NY2d 713, 715). The Legislature has granted such authority to many agencies in various contexts. When it has granted such authority, it has done so in express terms and has provided for procedural safeguards to assure, at minimum, an adequate notice and opportunity to be heard. For example, the Department of Labor is empowered to investigate claims of violations of wage provisions and to debar a violator from submitting a bid for any public work contract if two violations are committed within a six-year period (Labor Law § 220-b). The statute provides procedures to be followed in such an investigation. In the instant case, the power sought to be exercised by the Department is likewise punitive. Demonstrative of this is the fact that the sanction imposed bears no relationship to any possibility that petitioner will cure the defects found by the Department. The Legislature has not granted such power with attendant procedural safeguards to the Department.*

Nor can the power to debar bidders be necessarily implied from the authority to reject bids made by irresponsible bidders. The ability of the Department to reject bids of irresponsible bidders is not frustrated by its inability to debar future bids. Once the Department finds a bidder to be irresponsible for a particular reason, assuming that such a finding was not arbitrary or capricious, it could proceed to reject each of that bidder's future bids, in effect creating the sort of debarment accomplished in the instant case. However, this would force the Department to consider anew the bidder's responsibility

---

* We note that the fact that petitioner has signed contracts with the Department which set forth the debarment policy should not work a waiver of petitioner's right to challenge the Department's authority to establish such a policy *(see, Salla v County of Monroe,* 64 AD2d 437, 442, *affd* 48 NY2d 514, *cert denied* 446 US 909; *Matter of Abramovich v Board of Educ.,* 62 AD2d 252, 254, *affd* 46 NY2d 450, *cert denied* 444 US 845). Otherwise, an agency could create by contract authority that which has not been delegated by the Legislature.

upon each bid and, presumably, change its position when and if the bidder remedies the cause of the finding of irresponsibility. Such a situation would be consistent with the fact that the Department has not been authorized to punish irresponsible bidders but only to deny the awarding of contracts to irresponsible bidders. This situation is thus unlike that in *Matter of Rubin v Campbell* (48 NY2d 805), where it was held that the Department of Health has inherent power to police the quality and value of services rendered by Medicaid providers and to take remedial measures against those whose services were found to be inadequate. There, the agency's duty would be hampered if it had to continue to authorize the payment of Medicaid funds to a provider charged with wrongdoing until formal charges were determined *(see, Lang v Berger,* 427 F Supp 204, 213-214, n 37). We conclude that existing statutes do not grant to the Department the authority to create a mechanism for the debarment or suspension of prospective bidders.

As a final matter, even if the Department did have the authority to debar prospective bidders from submitting bids, the provisions of MAP 7.1-7-4 would still be invalid since the Department failed to file them as regulations with the Secretary of State pursuant to NY Constitution, article IV, § 8. Where a fixed general principle is applied by an administrative agency without regard to other facts and circumstances relevant to the underlying regulatory scheme, the agency can be said to have invoked its quasi-legislative, rule-making authority and becomes obligated to file the rule or regulation with the Secretary of State *(Matter of Connell v Regan,* 114 AD2d 273, 275; *see, Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951). MAP 7.1-7-4 does not simply establish guidelines, state general policy or relate merely to internal policy *(see,* State Administrative Procedure Act § 102 [2] [b] [i], [iv]). It authorizes the sanction of debarment and sets up the procedures to be followed, including a provision for administrative appeal. Thus, MAP 7.1-7-4 is an attempt to implement or apply law *(see,* State Administrative Procedure Act § 102 [2] [a] [i]) such that it was required to have been filed with the Secretary of State.

In conclusion, MAP 7.1-7-4 was unlawfully adopted and was properly declared invalid. Further, the decision of the Department debarring petitioner from submitting bids for a period of 30 months, based as it was on MAP 7.1-7-4, was properly set aside. We reach no other issue.

MAIN, CASEY, WEISS and YESAWICH, JR., JJ., concur.

Judgment affirmed, without costs.