OPINION OF THE COURT
Harold J. Hughes, J.
The petition will be granted to the extent of directing the respondents to issue a notice of complete application for a permit to expand the Orange County landfill and to publish public notice thereof, and in all other respects will be denied, without costs to any party.
The factual background and legal issues raised in this proceeding are set forth in this court’s decision of February 25, 1987. Briefly, in June of 1984, the County of Orange applied to the Department of Environmental Conservation (DEC) for a permit to continue and expand its operation of a sanitary landfill located over an aquifer. DEC mailed a notice of incomplete application which required the submission of a draft environmental impact statement (DEIS). On July 3, 1986, the county submitted a DEIS to DEC and did not receive *3 any notice sent within 15 calendar days that the application was incomplete. Subdivision (1) of ECL 70-0109 provides in part as follows: "(a) On or before fifteen calendar days after the receipt of an application for a permit which has been filed in a manner and in a form prescribed by the department, the department shall mail written notice to the applicant of its determination whether or not the application is complete.
"(b) if the department fails to mail written notice to an applicant of its determination whether or not an application is complete within such fifteen day calendar period, the application shall be deemed complete.”
The Commissioner’s regulations provide, in 6 NYCRR 621.5, as follows:
"(b) The department shall mail notice of its determination of completeness or incompleteness to the applicant * * *
"(2) * * * on or before 15 calendar days after receipt of the application * * *
"(f) If the department fails to mail notice of its determination of completeness or incompleteness to the applicant within the time limit specified above, the application shall be deemed complete.”
Upon receipt of the petitioner’s resubmitted permit application on July 3, 1986, DEC filled out on the timetable of its own permit application process sheet that its notice of completeness or incompleteness was due to be issued by July 18, 1986. DEC concedes that it failed to send a notice of incompleteness within that time, and did not do so until advised of the commencement of this proceeding in November of 1986.
Petitioner contends that the respondents refuse to deem his permit application complete and process it because he will not comply with Commissioner Williams’ aquifer policy, which petitioner alleges has not been properly promulgated as a rule or regulation, and because the county will not submit further hydrogeological data.
The respondents assert as an affirmative defense that subdivision (5) of ECL 8-0109 provides in pertinent part that: "An application for a permit or authorization for an action upon which a draft environmental impact statement is determined to be required shall not be complete until such draft statement has been filed and accepted by the agency as satisfactory with respect to scope, content and adequacy for purposes of paragraph 4 of this section.”
Respondents argue that the DEIS submitted in July of 1986 *4 was never accepted by DEC as complete and therefore the application cannot be complete. The Attorney-General took the position at oral argument that subdivision (5) of ECL 8-0109 carves out an exception to the uniform procedures set forth in ECL article 70, and in particular to the 15-day time period set forth in ECL 70-0109. The court disagrees.
Statutes should be construed in harmony rather than in conflict. The two provisions do not conflict. Subdivision (5) of ECL 8-0109 provides that an application for a permit is not complete until DEC is satisfied with the scope, content and adequacy of the DEIS, and subdivision (1) of ECL 70-0109 gives DEC 15 days to determine whether the DEIS is adequate or inadequate and to so notify the applicant.[1] Such construction is in harmony with the Legislature’s finding that "It is the intent of the legislature to establish reasonable time periods for administrative agency action on permits” (ECL 70-0103 [3]). Paragraph (b) of subdivision (1) of ECL 70-0109 requires that an application be deemed complete if DEC fails to send notice of incompleteness in order to set in motion the timetable set forth in the uniform procedures and compel that the permit application continue to be processed. Any other construction would result in permit applications being held in administrative limbo, neither denied, granted, or processed, as has been the case with this application, which has been pending since 1984.
DEC is not without the means of acquiring information it deems necessary to meet its statutory burden of protecting the environment, since under subdivision (2) of ECL 70-0117, at any point in the application process, DEC may request additional data, and the failure of the applicant to respond could be determined by a court to be a rational basis for denial of the application (Matter of Atlantic Cement Co. v Williams, 129 AD2d 84).[2] The subdivision specifically provides that a request for such additional information does not extend "any time period for department action contained in this article”. Thus, *5 DEC can obtain additional information, while still being spurred to action by the time limitations contained in the uniform procedures. If either the applicant or the Commissioner wishes to waive or extend any time period specified in the article they can do so, but only upon written request and the consent of the adversary (ECL 70-0109 [6]). The requirement of a written request and consent is to avoid the types of claims raised by the third and fourth affirmative defenses set forth in the respondents’ answer which contend that a course of conduct entered into by the petitioner caused DEC to fail to meet its 15-day statutory notice requirement and the petitioner should be estopped due to such conduct.
The second affirmative defense is that the permit application is not complete due to a failure to comply with subdivision (1) of PRHPL 14.09 which provides in pertinent part that: "Prior to an action of approval * * * of any private project by a state agency, the agency’s preservation officer shall give notice, with sufficient documentation, to and consult with the commissioner concerning the impact of the project if it appears that any aspect of the project may or will cause any change, beneficial or adverse, in the quality of any * * * archeological * * * property that is * * * determined to be eligible for listing on the state’s register by the commissioner.”
The statute places an obligation upon each State agency’s preservation officer to review project applications to determine if the project will affect a historic, architectural, archeological or cultural property listed on the national register of historic places, the State register, or eligible to be so listed, and to give prompt notice and to consult with the Commissioner of Parks, Recreation and Historic Preservation. Apparently, DEC contends that petitioner’s landfill expansion project may change an archeological property listed on the State register, and the failure of DEC’s preservation officer to give the prompt notice required by the statute is a basis for determining that petitioner’s application is incomplete. DEC relies upon 6 NYCRR 621.3 (a) (6) which provides: "If a project is subject to the New York State Historic Preservation Act of 1980 (article 14 of the Parks, Recreation and Historic Preservation Law), the application is not complete until the process of consultation with the State Office of Parks and Recreation, if required, is complete.”
Respondents argue that since DEC has not finished its consultation with the Office of Parks and Recreation, the above-quoted regulation makes the permit application incom *6 píete. The only problem with that argument is that ECL 70-0109 (1) (b) states, "If the department fails to mail written notice to an applicant of its determination whether or not an application is complete within such fifteen calendar day period, the application shall be deemed complete” (emphasis supplied). Thus, there is a statute deeming petitioner’s permit application complete, and a regulation stating that it is not complete. When a statute and a regulation conflict, the regulation must yield to the will of the Legislature (State Div. of Human Rights [Valdemarsen] v Genesee Hosp., 50 NY2d 113).
PRHPL 14.09 does not place a burden upon the private applicant for a permit, but rather places the burden upon each State agency’s preservation officer. An agency’s own inaction in not complying with section 14.09 cannot be the basis for forever placing a permit application in administrative limbo as incomplete. Section 14.09 does not state that the notice and consultation required therein must be complete before the permit application is deemed complete. Rather, it states that each State agency, through its preservation officer, must complete the notice and consultation process before giving final approval to a project. Consequently, DEC can comply with the statute during any stage of the administrative proceeding up to the time it reaches a final determination. If DEC needs more information from an applicant in order to comply with section 14.09, it can obtain that information under ECL 70-0109 (6).
The third and fourth affirmative defenses of waiver and estoppel lack merit in view of ECL 70-0109 (6).
Respondents’ fifth affirmative defense is: "The Commissioner’s Aquifer Policy is not a rule or regulation in that it does not establish that the members of his staff involved in the processing of applications relating to landfills and sensitive aquifers will make decisions granting or denying the applications on the basis of his policy. Rather, it establishes that the Commissioner, on a case by case basis, will require a showing of 'compelling and overriding public need’ that 'overwhelmingly countervails and potential adverse impacts of the project’ before he can make his findings under SEQRA that would enable the application to be approved. It is, therefore, not violative of the New York State Constitution or laws for the members of the Department staff who process such applications to request the information pertaining to such a showing before the application is determined by them to be complete.”
*7 Section 8 of article IV of the NY Constitution provides in pertinent part that "No rule or regulation made by any state department, board, bureau, officer, authority or commission, except such as relates to the organization or internal management of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state”. The Commissioner’s aquifer policy has not been officially adopted as a rule or regulation. The test of whether the aquifer policy is subject to the constitutional filing requirement is where "a fixed general principle is applied by an administrative agency without regard to other facts and circumstances relevant to the underlying regulatory scheme, the agency can be said to have invoked its quasi-legislative, rule-making authority and becomes obligated to file the rule or regulation with the Secretary of State” (Matter of Callanan Indus. v White, 118 AD2d 167, 171; Matter of Connell v Regan, 114 AD2d 273, 275). The aquifer policy would appear to be an across-the-board fixed general standard. It is applied, without regard to any other fact or circumstance relevant to the underlying regulatory scheme, to any application for a permit to expand an existing landfill located over a primary aquifer. Indeed, Commissioner Williams so states in his directive of August 23, 1985, that "it shall be the policy of the Department of Environmental Conservation that new landfills and expansions of existing landfills may be sited over primary or principal aquifers or within water supply well head areas only upon a demonstration that there is a compelling and overriding public need to do so”. The aquifer policy sets forth an evidentiary standard that all permit applicants have to meet, i.e., a demonstration of a compelling and overriding public need, without regard to any other requirement he or she may be held to in order to obtain the permit. The public is entitled to know what standards it must meet in order to obtain licenses or permits from its government, and that is the purpose of the constitutional requirement that such standards be officially promulgated and published.
Assuming, arguendo, that the aquifer policy is not subject to the constitutional filing requirement, the respondents are still in error in contending that "It is, therefore, not violative of the New York State Constitution or laws for the Department staff who process such applications to request the information pertaining to such a showing before the application is determined by them to be complete”. Whether a Department policy need be officially filed as a rule is not dispositive of the *8 question of whether an administrator may use that policy in direct contravention of a statute. The Legislature has stated that if DEC fails to mail written notice that an application is incomplete within the 15-day calendar period "the application shall be deemed complete” (ECL 70-0109 [1] [b]). DEC failed to meet the 15-day requirement in this case, and thus by operation of the statute, the permit application must be deemed complete. Commissioner Williams and his Department are not free to undo a legislative mandate by determining that the permit application is incomplete due to a failure to comply with the aquifer policy.

. There is no suspension of time limits in this case as DEC is the lead agency (ECL 70-0109 [4]; Matter of East Clinton Developers v Department of Envtl. Conservation, 109 Misc 2d 786).

. The State’s aquifers must be protected. If DEC feels that further hydrogeologic studies are required it can so request even while the application is being processed as complete. If petitioner refuses to provide the information the application can be denied and the issue for court review would be whether the Commissioner acted irrationally in refusing to issue a permit without the benefit of environmental information he deemed essential.