In the Matter of Tonee Chiles et al., Respondents, v Karen S. Burstein et al., as Commissioners of the Civil Service Commission, et al., Appellants.

Third Department, May 5, 1988

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (O. Peter Sherwood* and *Barbara B. Butler* of counsel), for appellants.

*Richard E. Casagrande (Nancy L. Burritt* of counsel), for respondents.

### OPINION OF THE COURT

MIKOLL, J.

The issue before us is whether Supreme Court was correct in finding that the use of a nomination procedure in conjunction with zone scoring in a civil service examination violated the constitutional and statutory requirements that appointments be made upon merit and fitness (NY Const, art V, § 6; Civil Service Law § 50 [1]).

Respondent Department of Civil Service (hereinafter the Department) conducted a civil service examination for the position of treatment team leader at facilities operated by respondent Office of Mental Health (hereinafter OMH) and respondent Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD). This position covers a variety of first-level management jobs at OMH and OMRDD and includes parenthetic titles in Mental Health, Mental Retardation, and Children and Youth Services. The announcements stated that the examination would include a written and oral test and that only those candidates receiving passing scores on the written test would be notified to appear for the oral test.

Each of petitioners took the written test, held on January 8, 1983, the results of which were announced on April 18, 1984. The "raw score" of each candidate was statistically adjusted into a converted score and points were added to the converted score for seniority. The "raw score" represented the number of questions a candidate answered correctly. Next, the Depart-

ment utilized a zone scoring method of ranking candidates' converted scores which effectively placed some candidates with different scores in the same zone or range. Six zones, four passing and two failing, were established. Candidates with converted scores between 97 and 107 were placed in the first zone with a score of 100. Candidates with converted scores between 82 and 96.9 were placed in the second zone with a score of 95. Candidates with converted scores between 76 and 81.9 were placed in the third zone with a score of 82. Candidates with converted scores between 70 and 75.9 were placed in the fourth zone with a score of 70. Candidates with converted scores between 60 and 69.9 were placed in the fifth zone with a score of 60. Finally, candidates with converted scores between 0 and 59.9 were placed in the sixth zone with a score of 55. All petitioners, except two,* were placed in the second zone and assigned zone scores of 95.

After tabulating results of the written test, the Department announced its decision to administer the oral test to all candidates receiving a zone score of 97.5 or higher. As to the candidates with zone scores of 95, the Department utilized a nomination procedure to determine who could take the oral test. Pursuant to this procedure, local OMH and OMRDD facilities were instructed to "nominate enough candidates with scores of 95 or higher to meet current needs". The facilities were advised that "the nomination process would be administered in a fair, ethical manner and the facilities, in choosing, would give due weight to affirmative action considerations". Many of petitioners have not been nominated to take the oral test. Petitioners lost their challenge to the legality of the examination upon appeal to respondent Civil Service Commission, but were successful before Supreme Court in this CPLR article 78 proceeding. Supreme Court found, *inter alia,* that the use of zone scoring and the nomination procedure violated the merit and fitness requirements contained in NY Constitution, article V, § 6 and Civil Service Law § 50 (1), and also that the use of zone scoring violated 4 NYCRR 67.1 (c).

This court, in *McGowan v Burstein* (130 AD2d 123), addressed the use of zone scoring, holding that it is presumptively unconstitutional under NY Constitution, article V, § 6. We opined that some civil service positions may lend themselves to zone scoring without contravening the law. The issue

---

* Petitioners Sandy Tedesco and Robert Breglio were placed in the first zone.

on this appeal distills itself to whether respondents have demonstrated that the use of zone scoring was warranted in this case.

Respondents attempt to justify the use of zone scoring on the ground that the diversity of job assignments and the variety of skills required necessitated a scoring procedure which would provide local facilities with a broad choice of candidates and the opportunity to consider candidates' special qualifications for specific vacancies. Respondents noted that numerous variables, including client population, work setting and geographic location, influenced skills critical to successful performance in various job assignments. Respondents contend that such skills could not be accurately ascertained from raw scores on the more general written test and prompted the use of zone scoring as a means of increasing the eligible pool of candidates, thereby facilitating a better match between a specific job and candidate. Further, respondents urge that zone scoring was used to complement local facilities' affirmative action programs by allowing a large number of qualified minority candidates to proceed to the selection process which would not be achieved if rankings based on raw score alone were used.

■ The record indicates that out of a total group of 2,990 candidates, the methodology used resulted in 202 candidates being placed in the first zone and 1,881 being placed in the second zone. While facially respondents' argument seems logical, we find respondents' position impaired by their failure to explain why this particular use of zone scoring, which resulted in a 14-point spread in the second zone, by far the largest of the six zones, was needed to serve the ends respondents sought to achieve. Nor is there any substantiation of the claim that affirmative action purposes were achieved. Rather, respondents agree that the results achieved were race neutral. We hold that it was incumbent on respondents to make such a showing. As is demonstrated by the record, a huge number of candidates found themselves in the second category. All were placed on the same footing, although scores in that zone ranged from 82 to 96.9.

Superimposed on the substantial blurring effect that such wide zone scoring had on the relative merit of candidates was the use of a nomination procedure to select candidates to take the oral test. Courts have long recognized the limitations of competitive examinations and have recognized that subjective measures may be used to some extent to assess merit and

fitness in certain circumstances *(see, Matter of Cassidy v Municipal Civ. Serv. Commn.,* 37 NY2d 526, 529; *Matter of Sloat v Board of Examiners,* 274 NY 367, 373). However, here the subjective component of the examination went far afield of the heretofore limited application of this principle. We observe that local facility directors, charged with the appointment power, received no specific criteria upon which to base selections. The instructions to them were general and nonspecific. The further progression in the examination process of candidates within zone two was left to the unfettered personal preferences of local facility directors. Such methodology further diluted the purposes behind the merit and fitness requirements of NY Constitution, article V, § 6. Respondents had the duty to fix a clear and reasonable standard by which qualifications of applicants for civil service status may be tested *(see, Matter of Cowen v Reavy,* 283 NY 232).

■ Petitioners have raised several other allegations that the scoring methodology contravened various statutes and administrative rules. Petitioners urge that zone scoring changed "the relative order of scores" in violation of 4 NYCRR 67.1 (c). Under the plan, individuals whose scores varied by up to 14.9 points were all considered to have achieved the same result. Use of such a wide span affected the relative order of scores in violation of 4 NYCRR 67.1 (c) *(see, McGowan v Burstein,* 130 AD2d 123, 125, *supra).* Petitioners also contend that zone scoring violated 4 NYCRR 3.6 in that it prevented candidates' names from being entered on the eligible list in the order of their ratings. Since zone scoring equated the written test scores of many candidates, it effectively made it impossible to rank such candidates on the eligible list in the order of final ratings. The scheme did not allow for an impartial tie-breaking procedure as required by 4 NYCRR 3.6. Instead, respondents utilized a nomination procedure for the purpose of determining which candidates would proceed to the oral test. Failure to use an impartial ranking procedure does not comport with 4 NYCRR 3.6.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Judgment affirmed, with costs.