OPINION OF THE COURT
Harold J. Hughes, J.
The motion of the respondents to dismiss the petition upon the objections in point of law that no cause of action is stated and that petitioner has failed to join necessary parties, will be denied, without costs.
Petitioner is a not-for-profit corporation comprised of 34 members which derive the primary portion of their business from manufacturing and supplying blacktop paving material for public works projects for the Department of Transportation (DOT) and the Office of General Services (OGS) as suppliers, contractors, or subcontractors. The petition alleges that for the last three years Commissioners White and Egan have engaged in a policy of blacklisting firms from participating as contractors, subcontractors, or suppliers of blacktop upon construction projects awarded by them pursuant to public bidding. A firm is placed on this blacklist if it: (1) fails to comply with affirmative action quotas on specific projects; (2) is the subject of a criminal investigation or an indictment involving public works contracts; (3) has an affiliate which is the subject of an indictment involving a public works contract; and (4) is convicted of a crime, or an affiliate is convicted of a crime, relating to public works contracts.
The petition alleges that a company can obtain removal from this blacklist by entering into an agreement with DOT to pay it, or one of its designees, a significant amount of money, and by promising not to sue DOT employees with respect to the blacklists or "buy off’ agreements.
One of the specific examples of such agreements annexed to the petition is a contract between Hubbell Holding Corp. and the New York State Department of Transportation, dated February 28, 1986, relating to a determination made by DOT on December 11, 1985, to suspend Hubbell and its affiliates from: "Participating in future work as contractors, subcontrac *838 tors, suppliers and providers of labor on all Department projects for a period of eighteen (18) months. The stated reason for the suspension was that the suspended companies had participated in a deliberate circumvention of the laws and provisions of the Department contracts and specifications, rules and regulations, relative to the Disadvantaged/Minority/Women’s Business Enterprise Program (hereinafter referred to as " 'D/M/WBE Program’), in connection with the relationship between the companies and R. L. Haith Construction Corporation”.
To get off the blacklist Hubbell had to agree to subdivision (h) of paragraph (2) of the agreement which provides: "Hub-bell desires to participate in programs that strengthen the D/ M/WBE Program. In furtherance of this desire, Hubbell agrees that it will contribute the sum of $150,000.00 to a not-for-profit organization, or other support entities, whose purpose is to provide support to the D/M/WBE Program, and which is approved by the Department. The first installment of $50,000 will be made on June 11, 1986, with the approval of the Department, to the not-for-profit organization or other support entity or into an escrow account for this purpose. The following installments of $50,000 each are due on July 11, 1987, and June 11, 1987”.
Hubbell had to further agree that it "and its subsidiaries release and hold harmless the Department and the State of New York, and its employees, in their official or personal capacity, of any and all liability or claim arising out of the suspension of O. W. Hubbell & Sons, Inc. * * * and their affiliates pursuant to the determination of the Contract Review Unit dated December 11, 1985”.
The second specific example is the agreement between DOT and Suit-Kote whereby in order to get off the blacklist "SuitKote and its affiliates agree to pay NYSDOT, or an appropriate State governmental entity or official designated by NYS-DOT, the sum of $350,000.00 (Three Hundred and Fifty Thousand Dollars) payable in installments as follows: $50,000 on or before June 30, 1986; $50,000 on or before June 30, 1987; $50,000 on or before June 30, 1988, $100,000 on or before June 30, 1989; and $100,000 on or before June 30, 1991”. Additionally, Suit-Kote had to promise not to sue "the employees of the State in their official and personal capacities arising out of * * * any possible disqualification of * * * [company] and/or its affiliates and the negotiation of this Agreement”.
*839 The last example annexed to the petition is an agreement between Penn Can Road Materials, Inc., its affiliates and principals, and DOT whereby Penn agreed to pay DOT $25,000 and to not sue any DOT employees, as conditions for getting off the blacklist.
In Matter of Callanan Indus. v White (131 Misc 2d 333), this court held that the Commissioner of Transportation has no authority to enact his own affirmative action program, or to debar a contractor prospectively from bidding on DOT projects because of a failure to comply with DOT’s affirmative action program. On appeal, the Appellate Division went even further and held that the only authority given to DOT with respect to the awarding of contracts is to reject or accept bids, and it had no authority to punish those it considers to be irresponsible bidders by prohibiting them prospectively from submitting bids (Matter of Callanan Indus. v White, 118 AD2d 167, lv denied 69 NY2d 601). The Appellate Division instructed the Commissioner and Department that the only power it had was to decide on a contract-by-contract basis whether a particular bidder was responsible, and in so doing, they could consider past conduct such as an indictment for public works fraud. However, in Matter of Sehiavone Constr. Co. v White (117 AD2d 440, 443), the same court held that a determination by DOT that a contractor was not a responsible bidder due to a pending criminal indictment was a determination in which the contractor "had a cognizable liberty interest”, giving rise to due process protection, which requires notice of the charges and an opportunity at a hearing to rebut the charges. Most recently in Matter of Liquid Asphalt Distribs. Assn. v White (137 AD2d 913), the Appellate Division once again instructed DOT that it "lacks authority to debar or suspend the contractors prospectively”, and it could not compile a blacklist of contractors prohibited from participating as bidders, subcontractors, or suppliers on highway projects.
Despite explicit instruction from the courts that it is engaging in illegal activity, this record indicates that DOT continues to compile lists of contractors prospectively prohibited from bidding, or acting as subcontractor, or supplier upon DOT construction projects. Incredibly, it appears that DOT has set up a program where a contractor can buy its way off the blacklist by paying money to DOT or to a not-for-profit corporation favored by the Commissioner, and promising not to bring legal proceedings against the DOT employees engaging in the conduct ruled illegal in Matter of Callanan (supra) *840 and Matter of Liquid Asphalt Distribs. Assn. (supra). Compelling contractors to enter into the agreements annexed to the petition in order to be permitted to do what the contractors have the legal right to do (bid on public contracts), constitutes unethical, and possibly criminal, conduct.
Section 74 of the Public Officers Law sets forth the Code of Ethics applying to public officers and employees. Paragraph (d) of subdivision (3) of that section provides in pertinent part, "[n]o officer or employee of a state agency * * * should use * * * his official position to secure unwarranted privileges * * * for himself or others.” Here, through the contract between Hubbell and DOT, respondent White used his official position as Commissioner of Transportation to compel Hubbell Holding Corp. to pay $150,000 "to a not-for-profit corporation * * * whose purpose is to provide support to the D/M/WBE Program” in order to exercise its legal right to bid on public contracts without being barred by the Commissioner’s illegal blacklist.
The Commissioner of DOT is not authorized to compel a private company to pay $150,000 to another private company espousing the Commissioner’s pet causes as a condition to doing business with the State. Such conduct clearly constitutes the use of an official position to secure unwarranted privileges for others in violation of section 74 of the Public Officers Law.
Additionally, compelling the payment of money, and promises not to sue, in order to be off an illegal blacklist approaches criminal conduct. The Federal Hobbs Act (18 USC § 1951 [a], [b] [2]) provides in pertinent part that:
"(a) Whoever in any way or degree obstructs, delays, or affects commerce * * * by * * * extortion or attempts or conspires so to do * * * shall be fined not more that $10,000 or imprisoned not more than twenty years, or both.
"(b) As used in this section * * *
"(2) The term 'extortion’ means the obtaining of property from another, with his consent, induced * * * under color of official right.”
It has been held that interstate commerce is affected when tribute is exacted from local contractors constructing part of the interstate highway system (United States v Daley, 564 F2d 645, 649 [2d Cir 1977]).
Section 135.60 of New York’s Penal Law defines coercion in the second degree as:
*841 "A person is guilty of coercion in the second degree when he compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in * * * by means of instilling in him a fear that, if the demand is not complied with, that actor or another will * * *
"8. Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely”.
Section 155.05 of the Penal Law defines larceny as:
"1. A person * * * commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.
"2. Larceny includes a wrongful taking, obtaining or withholding of another’s property, with the intent prescribed in subdivision one of this section, committed in any of the following ways * * *
"(e) By extortion.
"A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will * * *
"(viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely”. (Emphasis added.)
In the court’s view, a Judge is under a duty to report potential criminal activity that comes to light in the course of a proceeding pending before him. This is especially so when government officials are involved. Consequently, the suggestion of the Attorney-General that the issue of criminal wrongdoing be referred to the appropriate law enforcement officials will be acted upon. Copies of this opinion will be forwarded to: (1) the United States Attorney for the Northern District of New York; (2) the Albany County District Attorney; and (3) the New York State Commission on Government Integrity, to determine if action by them is appropriate.
Turning to the objection in point of law that the petition does not state a cause of action, deeming all of its allegations to be true, it charges, at the least, the same conduct already *842 proscribed in Matter of Callarian (supra) and Matter of Liquid Asphalt Distribs. Assn. (supra) and states a viable claim. The argument that Suit-Kote Corporation and Penn Can Road Materials, Inc., are necessary parties because of their contracts with DOT lacks merit. This proceeding seeks to compel the respondents to comply with the law as interpreted by the Appellate Division, and to prohibit the respondents from entering into and enforcing agreements that are in excess of their authority. The two private corporations referred to by the Attorney-General need not be parties for the court to direct such relief. Those companies can either move to intervene under CPLR 1013 and 7802, or the respondents can make a motion under CPLR 1003 to add those companies as respondents, if they be so advised.