OPINION OF THE COURT
William H. Keniry, J.
The primary underlying issue in this CPLR article 78 *29 proceeding involves a dispute over the power of the State Commissioner of Transportation and the State Commissioner of the Office of General Services to control the issuance and award of State highway construction and materials contracts through the use of the "lowest responsible bidder” concept as set forth in Highway Law § 38 and State Finance Law § 174.
The petitioner is a not-for-profit trade association comprised of 34 companies engaged in the sale and application of construction materials such as stone, blacktop and, through affiliates, liquid asphalt, used in the maintenance and repair of highways and streets within the State. This proceeding was initiated against Franklin E. White, the Commissioner of the State Department of Transportation (hereinafter DOT), and John C. Egan, the Commissioner of the State Office of General Services (hereinafter OGS), to challenge certain actions of DOT and OGS in the State highway contract award program which allegedly debars, suspends or blacklists, based upon the member’s past conduct, certain of petitioner’s members from receiving contract awards or subcontractor approval for public works projects.
The petitioner alleges that the respondents have instituted an illegal debarment and suspension policy against firms which allegedly fail to comply with affirmative action quotas; are the subject of criminal investigation or are under indictment involving public works contracts; are affiliated with a company under indictment involving public works contracts; or which have been convicted of a crime or which are affiliated with a company convicted of a crime pertaining to public works contracts. The petition sets forth five specific examples of the exercise of respondents’ alleged illegal debarment policy. The first involves the DOT’s award of an almost $1.7 million contract to the low bidder, John Arborio, Inc., conditioned upon Arborio’s agreement not to purchase material from Dutchess Quarry & Supply Co., Inc. (Dutchess), a member of petitioner, based upon Dutchess’ 1987 Federal indictment for alleged antitrust violations. Next, the petition alleges that OGS refused to award contracts for plant prices for bituminous mixed stockpile patching material for the period November 15, 1987 to June 30, 1988 to Dutchess and Plaza Materials Company (Plaza), without a hearing, because of an outstanding antitrust indictment of Dutchess and the fact that Plaza was affiliated with Yonkers Contracting Co., Inc., which was also under Federal indictment for alleged antitrust viola *30 tions.[1] The next claim is that DOT threatened to terminate an outstanding contract with Green Island Construction Co., Inc. (Green Island) unless Green Island terminated the involvement of Peckham Materials Corp. (Peckham), a member of petitioner, as a subcontractor or material supplier based upon Peckham’s 1987 Federal antitrust indictment. The next challenged act is OGS’s inclusion, in its invitation for bids for awards for delivered, furnished and applied contracts and plant prices for liquid bituminous material and blacktop, of a questionnaire that the bidder must complete which reads:
"FAILURE TO ANSWER THE FOLLOWING QUESTIONS MAY RESULT IN THE REJECTION OF YOUR BID.
"Within the previous 5 years, has your company or any of its related or subsidiary firms or any individuals associated with it or them been the subject of any of the following:
"1. Any criminal investigation, felony indictment or conviction concerning collusion or fraud in obtaining a contract for public work.
"2. Any voluntary exclusion from bidding or any agreement with any public entity to refrain from bidding.
"If you have answered yes to any of these questions, please describe the events in detail:”
The petition further alleges that the questionnaire is intended to facilitate OGS’s exercise of an illegal debarment policy by withholding 1988 contract awards from five of petitioner’s members who are under indictment or the target of a criminal investigation, namely, Dutchess, Peckham, Plaza, Maybrook Industries (Maybrook) and Sullivan Highway Products, Inc. (Sullivan). In addition, the petition alleges that OGS refused to issue plant price awards in 1986 and 1987 to three of petitioner’s members, Alleghany Bitumens, Inc. (Alleghany), Oswego Asphalt Co. (Oswego) and All-States Asphalt, Inc. (All-States), who were under antitrust indictments without affording prior notice and the opportunity for a hearing.
The final claim raises objections to DOT’s policy of negotiating "Restitution Agreements” with at least three companies, *31 Hubbell Holding Corp. (Hubbell); Suit-Kote Corporation (SuitKote) and Penn-Can Road Materials (Penn-Can), under which the three companies agreed to pay substantial sums to DOT, or an appropriate State governmental entity or official designated by DOT or a not-for-profit organization approved by DOT to avoid suspensions and debarment from future State contract awards. The petition further alleges that DOT is informing petitioner’s members now under indictment that they can avoid debarment or suspension by negotiating similar "Restitution Agreements” with DOT wherein they must agree to pay a sum representing 15% of the firm’s total volume of business with the State during the period covered by the criminal indictment to DOT or an appropriate State governmental entity or official designated by DOT.
The petitioner seeks a judgment from the court:
1. Declaring the enforcement by respondents against petitioner’s members and affiliates of debarments or suspensions for any reason as in excess of respondents’ jurisdiction, in violation of lawful procedure, affected by an error of law and arbitrary and capricious;
2. Declaring the enforcement by respondent White of any so-called "Restitution Agreement” which requires the payment of a sum of money to be relieved of respondents’ debarments and suspensions to be excess of respondent White’s jurisdiction, in violation of lawful procedure, affected by an error of law and arbitrary and capricious;
3. Declaring that respondents are without legal authority to suspend or debar petitioner’s member firms and affiliates for any reason from receiving awards as a contractor or approval as a subcontractor, supplier or provider of materials, labor and equipment on State construction projects;
4. Declaring that respondent White is without legal authority to enforce any so-called "Restitution Agreement” requiring payment of a sum of money in exchange for avoiding the imposition by respondents of debarments, suspensions and the loss of the right to participate on State construction projects, and adjudging said agreements null and void.
5. Annulling respondent White’s determinations as to Dutchess Quarry Supply Co. on project D252305 dated December 30, 1987 and as to Peckham Materials Corp. on project D252172 dated September 28, 1987 through January 5, 1988, and respondent Egan’s determination of December 14, 1987 to deny contract awards to Dutchess Quarry & Supply Co. and *32 Plaza Materials Company for plant prices for patching material.
Following commencement of this proceeding, the respondents moved to dismiss the petition in point of law alleging that the petition failed to state a cause of action. The motion was denied (New York State Asphalt Pavement Assn. v White, 138 Misc 2d 836). Respondents have since answered the petition. This court is now called upon to address the merits.
DOT and OGS admit the truth of many of the petitioner’s allegations. In their answer, respondents deny that any formal debarment policy exists but contend that they have the right to consider pending indictments and past criminal conduct in determining whether a contractor is a "responsible bidder, as will best promote the public interest” as mandated by Highway Law § 38 (3) and State Finance Law § 174 (1). Respondents allege that all of the restrictions imposed upon successful bidders, Arborio and Green Island, with respect to the rejection of certain material suppliers or subcontractors were lawful; that OGS’s refusal to award plant price contracts to Dutchess was an appropriate exercise of the responsible bidder criteria; that OGS’s inclusion of certain questions in bid invitations to elicit information of a bidder’s criminal history is an appropriate line of inquiry; and that the "Restitution Agreements” between DOT and certain named contractors are not illegal but rather are an appropriate method to negotiate with contractors to remedy conduct which could result in finding them irresponsible and thereby avert a situation wherein DOT could refuse to award contracts to such contractors. In addition, OGS contends that bidders, who were not awarded plant price contracts, because of pending or past criminal charges, were afforded an opportunity to meet with OGS to contest the facts that OGS felt warranted a finding of irresponsibility.
The highway construction industry and the State Department of Transportation have engaged in extensive litigation over the issue of debarment in recent years (see, Matter of Liquid Asphalt Distrib. Assn. v White, 137 AD2d 913; Matter of Callanan Indus. v White, 118 AD2d 167, lv denied 123 AD2d 462, and 69 NY2d 601; Matter of Schiavone Constr. Co. v Larocca, 117 AD2d 440). In an industry where public contracts involving millions of dollars are awarded annually, the threat to a company’s viability occasioned by the inability to compete for road improvement projects is significant.
*33 In this proceeding, the petitioner expresses alarm over the respondents’ alleged attempts to bar some of its members from the opportunity to compete for public road improvement contracts and to supply local municipalities with road improvement and repair materials under State contract. The petitioner contends that respondents have acted arbitrarily without affording the contractors basic due process of law.
The law is firmly established that the respondents lack the authority to debar or suspend contractors prospectively (Matter of Liquid Asphalt Distrib. Assn. v White, supra). The respondents do possess the power to refuse to award State contracts to irresponsible bidders (Matter of Callanan Indus. v White, supra). As the Appellate Division stated in Matter of Callanan Indus, v White (supra, at 170-171): "Nor can the power to debar bidders be necessarily implied from the authority to reject bids made by irresponsible bidders. The ability of the Department to reject bids of irresponsible bidders is not frustrated by its inability to debar future bids. Once the Department finds a bidder to be irresponsible for a particular reason, assuming that such a finding was not arbitrary or capricious, it could proceed to reject each of that bidder’s future bids, in effect creating the sort of debarment accomplished in the instant case. However, this would force the Department to consider anew the bidder’s responsibility upon each bid and, presumably, change its position when and if the bidder remedies the cause of the finding of irresponsibility. Such a situation would be consistent with the fact that the Department has not been authorized to punish irresponsible bidders but only to deny the awarding of contracts to irresponsible bidders. * * * We conclude that existing statutes do not grant to the Department the authority to create a mechanism for the debarment or suspension of prospective bidders.”
The courts have recognized that a criminal investigation or an indictment against a contractor can provide a rational basis for DOT or OGS to find that the contractor is not a responsible bidder (Matter of Schiavone Constr. Co. v Larocca, supra). Since a bidder, or a potential subcontractor on a State contract, has a cognizable protected interest in not being branded an "irresponsible” contractor which would undoubtedly adversely affect its ability to compete for State and municipal contracts, petitioner’s members are entitled to notice of the respondents’ intent to bar them from participation in certain contracts and consequently must be afforded an opportunity to rebut the charges (Matter of Schiavone Constr. *34 Co. v Larocca, supra). In this case, the contractors barred from participating as subcontractors or material suppliers for Arborio and Green Island (Dutchess and Peckham) and the contractor not awarded bids for plant prices for bituminous mixed patching material (Dutchess) were all either under Federal indictment or affiliated with an indicted company. A review of the indictments annexed to respondents’ answer indicates that those contractors were charged with bid collusion and bid rigging involving State and municipal contracts. Since such crimes, if indeed committed by the contractors, adversely impact the public well-being in the form of artificially inflated costs and establish a general lack of integrity, the respondents could properly, in the court’s opinion, consider such information in determining whether a specific contractor was responsible.
What the court must decide is whether the actions now being taken by the respondents afford the adversely affected contractors due process including the opportunity to contest the allegations of irresponsibility.
The record establishes that, with respect to OGS’s failure to award Dutchess a plant price contract for patching material, Dutchess was advised by letter of the reason for OGS’s decision and was afforded a preaward hearing to contest the action. Dutchess failed to request a hearing. With respect to DOT’s award of contract D252305 to Arborio, DOT contends that Dutchess was not entitled to a hearing because Arborio itself volunteered not to use its affiliate, Dutchess, as a supplier on the project. When DOT advised Green Island that contract D252172 was in jeopardy unless Peckham was barred from the job, Peckham was under Federal indictment and was also suspended by the Federal Highway Administration from participating in any Federally funded project. Contract D252172 is a Federal-aided project and respondent DOT alleges that Federal moneys would be jeopardized if Peckham participated in the contract. Peckham was not afforded an opportunity to contest DOT’s decision.[2]
It is this court’s decision that, before rejecting any contractor’s bid based upon a finding of irresponsibility or prior to refusing to consent to an approved contractor’s use of another *35 firm either as a subcontractor or material supplier, the respondents must notify the affected contractor in writing of their position specifying the reasons why it believes the contractor to be irresponsible. The respondents must afford the affected contractors the opportunity to appear and present any information or evidence they deem relevant to rebut the information relied upon by the respondents. The court does not mandate that a full, formal adversarial hearing is required in every instance but, in order to facilitate judicial review of respondents’ determinations, holds that at the very minimum, an informal record of the administrative proceedings must be compiled. The court finds that the procedure instituted by OGS which offers a contractor, whose responsibility is questioned, a preaward hearing satisfies the standard.
In applying this standard to the specific incidents complained of by petitioner, the court concludes that DOT’s decisions to bar Dutchess from participating with Arborio on project D252305 and to bar Peckham from participating with Green Island on project D252172 must be vacated. OGS’s decision to reject Dutchess’ bid for a plant price award will be affirmed.
The court further declares that, providing due process considerations are fulfilled, the respondents are empowered to deny State contracts or reject proposed subcontractors on a case-by-case basis upon a finding that the bidder or proposed subcontractor is not a responsible bidder.
The court further finds that the respondents can rightfully require that proposed bidders, as a condition to the consideration of a bid, answer questions designed to elicit information relating to the bidder’s past or present legal history. Since the respondents can consider past or present criminal involvement in evaluating whether or not a bidder is responsible, a bidder can be required to answer questions designed to elicit relevant information as part of the bidding process.
The final issue presented for the court’s consideration is the petitioner’s claim that certain so-called "Restitution Agreements” between DOT and contractors are illegal, unenforceable and null and void. Except for the fact that 1 of the 3 corporations who signed such an agreement is affiliated with a member of petitioner, none of the corporations directly involved are parties to this proceeding. Petitioner alleges that several of its members under indictment have been advised that the negotiation of such an agreement with DOT would remove them from the threat of debarment.
*36 The power of the court to issue a declaratory judgment, under CPLR 3001, is discretionary (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 148). Ordinarily the distinctions between an article 78 review and a declaratory judgment action which challenges the propriety of an administrative action are generally ignored (see, Bloom v Mayor of City of N. Y., 35 AD2d 92, affd 28 NY2d 952; Matter of Building Contrs. Assn. v Tully, 65 AD2d 199). A justiciable controversy is required in a declaratory judgment action since the court is proscribed from issuing purely advisory opinions (Cuomo v Long Is. Light. Co., 71 NY2d 349; Self-Insurer’s Assn. v State Indus. Commn., 224 NY 13). The primary purpose of a declaratory judgment is to adjudicate the litigant’s rights before a "wrong” actually occurs in the hope that later litigation will be avoided (Klostermann v Cuomo, 61 NY2d 525, 538). Ordinarily a trade association possesses the requisite standing to vindicate the rights of its members (Matter of Building Contrs. Assn. v Tully, supra) but a finding of standing is not mandatory particularly in circumstances where the association is only tangentially involved with the actual aggrieved parties (New York State Rest. Assn. v State Tax Commn., 66 AD2d 977).
As Special Term earlier observed, the issue of the propriety of the so-called "Restitution Agreements” is a subject that warrants close judicial scrutiny since such agreements may constitute "a program where a contractor can buy its way off the blacklist by paying money to DOT or to a not-for-profit corporation favored by the Commissioner, and promising not to bring legal proceedings against the DOT employees engaging in the conduct ruled illegal” (New York State Asphalt Pavement Assn. v White, 138 Misc 2d 836, 839, supra). In order to properly consider an issue which has such significant implications, the court must be presented with a full and complete record which adequately frames the factual background and legal issues. Such a record is not presented in this case. The three corporations which negotiated and executed the allegedly illegal contracts are not litigants in this case nor is a full record presented of the proceedings which culminated in the execution of the challenged agreements. A collateral challenge to the propriety of such contracts is not the appropriate way to litigate such important issues. The proper way to develop a complete adversarial record would be either the initiation of a direct challenge to the enforcement of one of *37 the "Restitution Agreements” or a declaratory judgment action commenced by one of the signatories.
The court, in the exercise of its discretion, declines to render a declaratory judgment on the issue of whether such "Restitution Agreements” are legal and enforceable. The petitioner lacks appropriate standing to raise such an issue within the confines of this article 78 proceeding and thus a justiciable controversy is not presented.
To recapitulate its rulings, the court holds as follows:
1. That the respondents have the authority to refuse to award contracts or approve subcontractors based upon a finding of irresponsibility on a case-by-case basis providing that due process is afforded the affected contractor;
2. That DOT’s decisions to bar Dutchess from participating with Arborio on project D252305 and to bar Peckham from participating with Green Island on project D252172 are vacated and annulled;
3. That OGS’s decision to deny a plant price contract for bituminous patching material to Dutchess is affirmed;
4. That respondents may lawfully inquire into a bidder’s past or present criminal history as part of the bidding procedure; and
5. That so much of the petition which seeks a declaratory judgment over the legality and enforceability of "Restitution Agreements” does not present a justiciable controversy and is dismissed.
Respondents to submit proposed judgment, without costs, with notice of settlement.

. Following commencement of this proceeding, petitioner’s attorney by letter dated January 26, 1988 advised the Attorney-General that it was withdrawing any request for relief on behalf of Plaza Material Company and Yonkers Contracting Co., Inc. This representation was reaffirmed in its brief. Accordingly, the court will consider the petition amended to the extent that any allegations pertaining to such firms will be deleted.

. Peckham’s Federal suspension ended on March 17, 1988; the company entered into an understanding with DOT on May 5, 1988 and on May 6, 1988 DOT advised OGS that it recommended approval of Peckham’s pending proposals.