OPINION OF THE COURT
Bernard J. Malone, Jr., J.
This is a special proceeding brought pursuant to the Election Law seeking a declaration of illegal conduct on the part of the respondents and an order directing the return of contributions.
The petitioners are five enrolled voters in Albany County as follows: Michael A. Avella is the Treasurer of the New York Republican State Committee; Shawn Marie Levine is the Executive Director of the New York State Conservative Party; Lawrence Rosenbaum was the Chairman of the Albany County Independence Party; and, Steven D. Moran and Robert Haggerty are registered members of the Albany County Democratic Party.
The respondents are: Friends of David Soares, the political committee formed to promote Mr. Soares’ candidacy for Albany County District Attorney; the Treasurer of the Working Families Party (WFP), a political party; the Center for Policy Reform (the Center), a not-for-profit District of Columbia corporation; the New York State Board of Elections; and the Albany County Board of Elections. An entity not named as a party in the proceeding, but central to the activity before the court, is the *160 Drug Policy Alliance Network (the Alliance), an incorporated association now registered as a political committee with the New York State Board of Elections.
The petition makes the following allegations of illegal conduct: the Center, doing business as the Alliance, made contributions to WFP in excess of the $5,000 corporate contribution limit set forth in Election Law § 14-116; the WFP illegally spent campaign funds to aid David Soares in the 2004 Albany County Democratic primary in violation of section 2-126 of the Election Law; and that Friends of David Soares, the WFR and the Center, doing business as the Alliance, entered into a conspiracy to illegally spend campaign funds to aid David Soares in the Democratic primary.
The respondents, other than the Boards of Elections, make the following arguments: the petitioners lack standing; Election Law § 2-126 is unconstitutional as applied if it is held to impede the free speech and association rights of the WFP and the Albany County voters in prohibiting the WFP from taking the actions it did on behalf of the Soares candidacy; the temporary restraining order which was issued in the proceeding and any injunctive relief are prohibited because the petitioners never filed an undertaking; there were no illegal corporate contributions because the Alliance is not a corporation and it never received any corporate contributions in excess of the $5,000 limit; the court lacks personal jurisdiction of the Alliance; and, the relief sought by the petitioners, i.e., the return of contributions, is beyond the authority of the court as it is not specifically authorized in the Election Law.
During oral argument on September 28, 2004, all of the parties entered into the following stipulation in open court: the temporary restraining order (TRO) was extinguished as to Friends of David Soares and the WFP; the TRO with respect to the Alliance would be extinguished upon the Alliance making all of the filings with the Board of Elections required by article 14 of the Election Law; the Alliance would register with the New York State Board of Elections as a political committee; and, there would be no evidentiary hearing and the court would determine this matter upon a stipulated documentary record.
CPLR 2104 provides for oral stipulations in open court by parties to the litigation. Such stipulations are binding contracts that can only be invalidated for fraud, collusion, mistake, accident or overreaching (Hallock v State of New York, 64 NY2d 224 [1984]). Long ago, the Court of Appeals held: “Parties by *161 their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights.” (Matter of New York, Lackawanna & W. R.R. Co., 98 NY 447, 453 [1885]).
Therefore, for the purposes of this proceeding, the stipulation made on September 28, 2004 established the following: once the Alliance made the necessary filings with the New York State Board of Elections, which has been done, there is no injunctive relief in place; the issues will be determined upon the pleadings and exhibits without an evidentiary hearing; and, the Alliance is a political committee registered with the New York State Board of Elections.
The court will first address the standing issue. Subdivision (3) of section 16-114 of the Election Law provides as follows:
“The supreme court or a justice thereof, in a proceeding instituted by any candidate voted for at the election or primary or by any five qualified voters, or by the state or other board of elections may compel by order any person who has failed to comply, or the members of any committee which has failed to comply, with any of the provisions of this chapter, to comply therewith.”
The Legislature has authorized a proceeding of this nature if commenced by five qualified voters. The petitioners in this proceeding are five qualified voters. The question is whether the courts have imposed standing requirements in Election Law proceedings beyond the plain language of the statute. There are court-developed rules concerning standing in Election Law proceedings and they are explained by the Third Department in the case of Matter of Gross v Hoblock (6 AD3d 933, 935-936 [2004]) as follows:
“A careful review of these and other cases, however, reveals that the standing issue ultimately turns upon whether the underlying challenge is to the internal affairs and/or operating functions of a political party in its designation of candidates or, rather, to a legislatively mandated requirement of the Election Law (see Matter of Stempel v Albany County Bd. of Elections, 97 AD2d 647, 648 [1983], affd 60 NY2d 801 [1983]). Thus, where the challenge is directed to the manner in or methods by which a given party committee votes on or designates a par *162 ticular candidate, a nonparty candidate will not be deemed aggrieved, as he or she has no interest in whether the formalities of that process have been followed (see e.g. Matter of Koppell v Garcia, supra; Matter of Swarts v Mahoney, supra). Where, however, the challenge is to a legislatively mandated requirement of the Election Law, such as the content of a designating petition (see Matter of Ciccotti v Havel, 186 AD2d 979 [1992], lv denied 80 NY2d 754 [1992]; Matter of Leipshutz v Palmateer,
112 AD2d 1098 [1985], affd 65 NY2d 963 [1985]),
‘the interests involved . . . transcend the mere regulation of the affairs of a political party’ (Matter of Martin v Tutunjian, 89 AD2d 1034, 1034 [1982]) and standing will lie. Inasmuch as the failure to file a Wilson-Pakula authorization ‘constitutes a fatal defect rather than a mere technicality’ (Matter of Maurer v Monescalchi, 264 AD2d 542, 543 [1999], lv denied 93 NY2d 816 [1999]; see Matter of Cosgrove v Sunderland, 253 AD2d 504 [1998]) and, hence, represents a challenge to a legislative mandate of the Election Law, we are satisfied that petitioner has standing.”
The allegations of this petition do not set forth a challenge to the internal affairs or operating functions of the Working Families Party. Rather, they allege violations of the legislative mandates of the Election Law set forth in Election Law §§ 14-116 and 2-126. Consequently, under the holding of the Third Department in the Gross case these petitioners have standing.
The next issue is the contention of the Center, the Alliance and the WFP that Election Law § 2-126, which prohibits a political party from making contributions to candidates “to be voted for at a primary election,” violates their First Amendment rights of speech and association. In the case of Matter of Baran v Giambra (265 AD2d 796, 797 [1999]), the Appellate Division stated:
“We reject the contention of respondents that Election Law § 2-126 unconstitutionally inhibits their First Amendment rights. Election Law § 2-126 serves a substantial government interest in removing both actual corruption and the appearance thereof from the electoral process (see, Buckley v Valeo, 424 US 1, 26-29). The statute does not prohibit a party’s endorsement of a candidate for nomination (cf., Eu v San Francisco County Demo *163 cratic Cent. Comm., 489 US 214, 222-223).”
This court is both bound by and agrees with that reasoning and does not find Election Law § 2-126 to be unconstitutional as applied to the facts set forth in this record.
The next issue for consideration is the petitioners’ contention that either the Center or the Alliance violated section 14-116 (2) of the Election Law which provides:
“Notwithstanding the provisions of subdivision one of this section, any corporation or an organization financially supported in whole or in part, by such corporation may make expenditures, including contributions, not otherwise prohibited by law, for political purposes, in an amount not to exceed five thousand dollars in the aggregate in any calendar year; provided that no public utility shall use revenues received from the rendition of public service within the state for contributions for political purposes unless such cost is charged to the shareholders of such a public service corporation.”
The petitioners contend that between July 1, 2004 and August 25, 2004 the Alliance, operating on behalf of the Center, made contributions to the WFP in the amount of $81,500. The petitioners argue that these contributions violated the $5,000 corporate contribution limit. That would only be so if the Alliance is a corporation or acted as a mere conduit for corporate donations in excess of $5,000.
The financial records and other evidence before the court establish that during December of 2002 the Center created the Alliance as a political action committee by establishing a separate fund account at Citibank, N.A. Political action committees are authorized under the Internal Revenue Code and are defined under section 14-100 (1) of the New York State Election Law as follows:
“ ‘political committee’ means any corporation aiding or promoting and any committee, political club or combination of one or more persons operating or co-operating to aid or to promote the success or defeat of a political party or principle, or of any ballot proposal; or to aid or take part in the election or defeat of a candidate for public office or to aid or take part in the election or defeat of a candidate for nomination at a primary election or convention, including all proceedings prior to such primary election, or of a candidate for any party position voted *164 for at a primary election, or to aid or defeat the nomination by petition of an independent candidate for public office; but nothing in this article shall apply to any committee or organization for the discussion or advancement of political questions or principles without connection with any vote or to a national committee organized for the election of presidential or vice-presidential candidates; provided, however, that a person or corporation making a contribution or contributions to a candidate or a political committee which has filed pursuant to section 14-118 shall not, by that fact alone, be deemed to be a political committee as herein defined.”
The limit in New York State upon monetary contributions to a political party by a political committee is $150,000 per year. At oral argument, the Alliance admitted that it both failed to properly register as a political action committee with the Internal Revenue Service and failed to timely register as a political committee with the New York State Board of Elections. By open court stipulation, the latter deficiency has been corrected. The federal status of the Alliance is of no concern to this court because it is charged with the duty of upholding only the New York State Election Law.
The financial records of the Citibank account disclose that the Alliance took in hundreds of thousands of dollars in contributions, but that none of those contributions were from a corporation in excess of $5,000. During 2004, checks were drawn upon the Alliance’s account with Citibank in favor of many candidates and political parties. However, there is no evidence in the financial records before the court of contributions by the Alliance to the WFP in excess of $150,000. There is no proof in evidentiary form in this record that the Center, the only respondent that is a corporation, made any donation to the WFP or the Alliance in excess of $5,000. That being so, as against the Center the petition must be dismissed for lack of proof.
With respect to the Alliance, it is an unincorporated association of which this court does not have personal jurisdiction. During the course of oral argument on September 28, 2004, one of the attorneys for the petitioner made an oral application that the Alliance be added as a respondent. The attorney for the Alliance offered, after consultation with his clients, to accept service of process on behalf of the Alliance. That never occurred and the fact remains that the Alliance is not a party to this litigation and therefore all allegations of illegal corporate dona *165 tions on its part must be dismissed (Kovach v Hinchey, 276 AD2d 942, 944 [2000]). Even had this court secured jurisdiction of the Alliance, as stated earlier in this decision and order, there is simply no evidence before the court of a corporate contribution in excess of $5,000 by either the Alliance or the Center to the WEE
The attorneys for the political committee of Mr. Soares argue that the petition does not make any factual allegations of illegal conduct on behalf of Mr. Soares or his committee. They further argue that the record does not contain any evidence that Mr. Soares or his political committee violated the cited provisions of the Election Law. The court agrees with those arguments. Other than a few references in the petition to a conspiracy there are no facts before the court establishing that either Mr. Soares or his committee made or received an illegal corporate contribution or are political parties that made illegal expenditures in favor of a candidate in a primary in violation of Election Law § 2-126.
The petitioners’ case against Mr. Soares and his political committee reduces to the contention that they were the beneficiaries of illegal activity on the part of the WFP in sending out four mailings to Albany County voters during the Democratic primary for the office of Albany County District Attorney and are now under some moral obligation to pay to the WFP the amount of money that the WFP expended on behalf of the Soares candidacy. There is no provision for such relief in the Election Law. Upon this record, Mr. Soares and his political committee did not violate any of the provisions of the Election Law cited by the petitioners. A similar situation was presented to the Appellate Division in the case of Kovach v Hinchey (276 AD2d 942, 944 [2000]), and handled as follows: “[Plaintiff’s fourth cause of action against the Paoletti defendants premised upon a moral duty to withhold campaign funds from Hinchey cannot withstand the motion to dismiss because it does not provide a ground for legal relief.”
This court will follow the ruling in Kovach and dismiss claims premised upon alleged moral duties.
Section 2-126 of the Election Law provides:
“No contributions of money, or the equivalent thereof, made, directly or indirectly, to any party, or to any party committee or to any person representing or acting on behalf of a party or party committee, or any moneys in the treasury of any party, or *166 party committee, shall be expended in aid of the designation or nomination of any person to be voted for at a primary election either as a candidate for nomination for public office, or for any party position.”
The petitioners contend that the WFP violated the above-quoted statute by sending four separate mailings to Albany County voters in the two weeks prior to the Democratic primary for the office of Albany County District Attorney promoting the candidacy of David Soares over Paul Clyne. The documentary evidence before the court establishes that the WFP did violate Election Law § 2-126 by spending money to promote the candidacy of David Soares in the Democratic primary for the office of Albany County District Attorney. That fact is established by the primary election filings of the WFP itself with the Board of Elections and also by the content of the four mailings. The Election Law requires that a political party making expenditures in a primary election file financial disclosure reports 32 days before the primary, 11 days before the primary, and 10 days after the primary. The WFP filed such primary disclosure forms. The only primary in Albany County in September 2004 for the office of Albany County District Attorney was the Democratic primary. If the WFP was not making expenditures in support of a candidate in the Democratic primary it had no reason to file primary election expenditure disclosure reports with the Board of Elections. Yet, it did so. This court takes the primary election filings of the WFP to be an admission that it was financially funding the candidacy of Mr. Soares in the Democratic primary. The language of the four mailings received as exhibits in this proceeding makes it explicitly clear to a reasonable person that the WFP was encouraging Democratic voters to vote for Mr. Soares rather than Mr. Clyne. The financial primary election filings of the WFP indicate that it spent $121,776.91 on behalf of promoting Mr. Soares prior to the Democratic primary. The petitioners are granted an order declaring that these expenditures violated section 2-126 of the Election Law.
The remaining issue is what remedy is appropriate for the violation. The remedy suggested by the petitioners of requiring the WFP to return funds to the Center or the Alliance is not available as the court has already determined that there is insufficient evidence before the court that those donations by the Alliance to the WFP were illegal. The expenditures have already *167 been made and any injunctive relief with respect to the primary is now moot. Financial fines, if any, are, in this court’s view, the appropriate domain of either the New York State or County Board of Elections.* Attempting to restrain the WFP from financially supporting any candidate in the general election would violate the First Amendment rights of the party members under both the United States and New York State Constitutions.
An appropriate deterrent to this type of proscribed conduct in the future could be criminal prosecution of the responsible persons or entities under the pertinent provisions of the Election Law (for instance, see Election Law § 17-102 [5]). However, it is not the function of the courts to institute criminal prosecutions. That duty resides with duly elected or appointed prosecutors. In this case, Albany County District Attorney Paul A. Clyne is not in a position to investigate possible criminal activity on the part of the WFP because he has a clear conflict of interest. However, he has the legal authority to request the appointment of a special prosecutor (County Law § 701) and the Attorney General may also have the legal authority to intervene upon a request from the appropriate person or entity (Executive Law § 63). Accordingly, this court will follow the procedure employed by Mr. Justice Harold J. Hughes in the case of New York State Asphalt Pavement Assn., Inc. v White (138 Misc 2d 836 [1988]), and forward copies of this decision and order to the Albany County District Attorney and the New York State Attorney General for any action which they deem appropriate.

 See Election Law § 14-126 (1), which authorizes a $500 fine “in a special proceeding or civil action ... brought by the state board of elections or other board of elections.” This special proceeding was not brought by a hoard of elections.